RECEIVED
JAN 09 2024
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

# UNITED STATES DISTRICT COURT

for the

N.D. Mississippi, Greenville Division

| | | |
|---|---|---|
| Beau McPhail<br>*Plaintiff*<br><br>v.<br><br>Honorable State Court Judge<br>Percy L. Lynchard<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No:<br>~~4:23-cv-00174-DMB-DAS~~<br>4:24cv002-DMB-JMV |

## **Petition for Declaratory and Injunctive Relief**

## TABLE OF CONTENTS

Petition for Declaratory and Injunctive Relief...............................................................i

    Table of Contents........................................................................................................ii

    Table of Cases ............................................................................................................iv

Petition for Declaratory and Injunctive Relief.............................................................1

Parties ..............................................................................................................................1

Jurisdiction.......................................................................................................................2

Standing............................................................................................................................5

Expectations of Privacy .................................................................................................7

Injuries .............................................................................................................................8

Summary of Facts............................................................................................................9

Complaint .......................................................................................................................17

    Claim 1 ........................................................................................................................17

    Claim 2 ........................................................................................................................18

Argument.........................................................................................................................18

    Introduction and Judicial Immunity .......................................................................18

    Standing, Subject Matter Jurisdiction, Advisory Opinions ...................................23

    Parental Presumptions Protect Children ...............................................................35

    Exploratory Search, Censorship..............................................................................36

First Amendment Protections ............................................................... 39

Punishing the Child ............................................................................ 42

Best Interests NOT Judicial ............................................................... 44

Relief Requested ................................................................................... 49

Injunctive Relief ................................................................................ 50

Declaratory Relief .............................................................................. 53

Preliminary Relief .............................................................................. 57

Conclusion ............................................................................................ 58

Prayer .................................................................................................... 59

CERTIFICATE OF SERVICE ............................................................... 61

TABLE OF CASES

Alexander v. United States, 509 US 544 (1993) ................................................ 51

Bellotti v. Baird, 443 US 622 (1979) ............................................................... 40

Board of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 US 537 (1987) ............ 39

Brown v. Entertainment Merchants Ass'n, 564 US 786, 131 S.Ct. 2729 (2011) ......... 33, 34

Burt v. Titlow, 134 S. Ct. 10 (2013) ................................................................ 20

Cleburne v. Cleburne Living Center, Inc., 473 US 432 (1985) ......................................... 29

Cohens v. Virginia, 19 US 264 (1821) ................................................................ 20

Cummings v. Missouri, 71 US 277 (1867) ........................................................... 43

Dennis v. United States, 339 US 162 (1950) ......................................................... 20

eBay Inc. v. Mercexchange, Ll, 547 US 388 (2006) .................................................. 23, 57

Felder v. Casey, 487 US 131 (1988) .................................................................. 20

FW/PBS, Inc. v. Dallas, 493 US 215 (1990) ......................................................... 41

Gomez v. Perez, 409 US 535 (1973) .................................................................. 29

Graham v. Richardson, 403 US 1449 (1971) ......................................................... 32

Griswold v. Connecticut, 381 US 479 (1965) .......................................................... 36, 40

Grutter v. Bollinger, 539 US 306 (2003) ............................................................. 53, 55

Harman v. Forssenius, 380 US 528 (1965) ........................................................... 42

Harris v. McRae, 448 US 297 (1980) .................................................................. 33

Haywood v. Drown, 556 US 729, 129 S.Ct. 2108 (2009) ............................................ 20

Howlett v. Rose, 496 US 356 (1990) .................................................................. 20

Janus v. AMERICAN FEDERATION OF STATE, 138 S. Ct. 2448 (2018) ...................... 31

Jimenez v. Weinberger, 417 US 628 (1974) .......................................................... 29

Kleindienst v. Mandel, 408 US 753 (1972) ........................................................... 37

Levy v. Louisiana, 391 US 68 (1968) .................................................................... 29

Marbury v. Madison, 5 US 137 (1803) .................................................................. 20

Mathews v. Lucas, 427 US 495 (1976) .................................................................. 29

Mills v. Habluetzel, 456 US 91 (1982) .................................................................. 29

MLB v. SLJ, 519 US 102 (1996) ............................................................................ 30

Moore v. East Cleveland, 431 US 494 (1977) ....................................................... 40

NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC. v. City of New York, _____,

(2020) ................................................................................................................. 59

Palmore v. Sidoti, 466 US 429 (1984) ................................................... 32, 53, 55

Parham v. Hughes, 441 US 347 (1979) ................................................................. 29

Paulsson Geophysical Services, Inc. v. Sigmar, 529 F. 3d 303 (5th Circuit 2008) .......... 24

Pennhurst State School and Hospital v. Halderman, 465 US 89 (1984) ......................... 20

Pickett v. Brown, 462 US 1 (1983) ....................................................................... 29

Robb v. Connolly, 111 US 624 (1884) ................................................................... 20

Roberts v. United States Jaycees, 468 US 609 (1984) ........................................ 39

Schmidt v. Catholic Diocese of Biloxi, 18 So. 3d 814 (Miss: 2009) ................... 25

Schneiderman v. United States, 320 US 118 (1943) ........................................... 32

Stanley v. Illinois, 405 US 645 (1972) ................................................... 28, 37, 42

Sullivan v. Little Hunting Park, Inc., 396 US 229 (1969) .................................. 49

Texas v. Johnson, 491 US 397 (1989) ................................................................... 32

Troxel v. Granville, 530 US 57 (2000) .................................................................. 35

US v. Sineneng-Smith, 140 S. Ct. 1575 (2020) ................................................... 53

Vance v. Universal Amusement Co., 445 US 308 (1980) ................................... 41

Weber v. Aetna Casualty & Surety Co., 406 US 164 (1972)........................................28, 42

Ysursa v. Pocatello Educ. Ass'n, 129 S.Ct. 1093, 555 US 353 (2009).............................. 41

## PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF

## PARTIES

1)    Plaintiff, Beau McPhail, at all times relevant to this Complaint, was a minor child subject of a child custody civil suit between his fit parents where the conflict to be resolved was a conflict of fully vested, federally protected, individual, full and equal parental care, custody, and control rights as privacy rights and intimate and expressive, close family, parent-child speech, association, worship, and family privacy as First Amendment protected core fundamental interests where the state of Mississippi impermissibly asserted itself into the proceedings in order to regulate these federally protected fundamental rights as punishment for one or both parents making an otherwise lawful and constitutionally protected privacy choice regarding marriage that the state disfavored. The state has NOT established standing to be a party to these proceedings.

2)    Concomitant to each parent's rights are Plaintiff's rights with each parent to be protected from unwarranted state interference into his private family life by his parents' protected privacy choices and his own inherent First Amendment protected rights of speech and association with each of his fit parents.

3)    Defendant, the Honorable State Court Judge Percy L. Lynchard, ("JPL" herein) at all times relevant to this Complaint, was a judge in the Chancery Court of Grenada County, Mississippi in cause number 12-5-132(PL), and was the sole state official with delegated authority to vindicate the state's Civil Law PostDivorce Child

Custody Regulatory Scheme[1] and related policy interests against the rights of the litigant parents and against Plaintiff while simultaneously being the sole state court judge with delegated jurisdiction to hear state and federal challenges to the state's Civil Law PostDivorce Child Custody Regulatory Scheme and the state's regulatory actions taken under color of that Scheme.

## JURISDICTION

4)    Plaintiffs invoke the jurisdiction of this court under the 1st, 4th, and 14th Amendments to the United States Constitution; under the Supremacy Clause; and under Title 28, United States Code, § 1331, and § 1343; Title 28 United States Code, § 2201 and § 2202; Title 42 United States Code, § 1988; and Title 42 United States Code, § 1983.

5)    Plaintiff complains herein of ongoing irreparable injury done to him through impermissibly biased proceedings taken in the absence of subject matter jurisdiction for personal and pecuniary benefit to the Defendant judge and the state of Mississippi under a state censorship scheme that deprives the censored parties of access to a competent state court in which to vindicate their federal rights.

---

[1] Civil Law PostDivorce Child Custody Regulatory Scheme refers to the state's civil law family code in those parts relevant to the child custody suit between fit parents that is at issue in these proceedings. Plaintiff can NOT be more precise in identifying the elements of that code applied to impermissibly regulate his rights as his parents and he are considered, as members of classes identified by the making of otherwise lawful constitutionally protected privacy choices the state disfavors, undeserving of the same rights of Notice, Confrontation, and Cross-Examination of the state's intended regulation, the state's precise regulatory authority, and the state's regulatory official to which other regulated parties are entitled. JPL being the sole regulator and the presiding judge over any challenge to the state's regulation is NOT subject to confrontation or cross-examination and consequently the parties are prevented from confronting or cross-examining their state regulator on his failure to provide adequate notice of the statutes applied in the regulatory action.

6)     Plaintiff has been subjected to irreparable injury by the state and by JPL in legal proceedings where his federally protected rights were NOT protected and where neither he nor his fit parents were permitted any opportunity to challenge the state action or to vindicate their federally protected interests with one another. JPL has violated Plaintiff's speech, association, worship, and family privacy rights with both of his fit parents and has subjected Plaintiff to a viewpoint-based prior restraint censorship scheme in fundamentally unfair proceedings, where the judge entered the proceedings predetermined to rule in the interests of a non-party non-litigant against the fundamental rights of the litigants under the state presumption that the First Amendment protected choice NOT to further speak or associate in an intimate and expressive, close family, marital association justifies the termination of all close family speech and associational rights and the state's seizure of complete dominion of Plaintiff from his fit parents, those rights to be replaced with a limited parental license subject to continuing limitation upon the mere viewpoint of a sole state official regarding matters of conscience in child-rearing, speech, and association.

7)     JPL deprived Plaintiff of First Amendment protected interests and subjected him to a state censorship scheme through viewpoint-based prior restraints through the application of broad discretion, justified by a merely substantial state interest without providing any meaningful protections against the evils of prior restraints or state censorship schemes.

8)     Consequently, Plaintiff suffered the irreparable injury claimed herein, through the ultra vires application of state power by a state actor acting under color of state law.

9)  Plaintiff is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law. Plaintiff seeks permanent declaratory relief sufficient to enjoin JPL from further irreparably injuring Plaintiff sufficient to support injunctive relief should JPL ignore this Court's declaration similarly to how JPL actively ignores his judicial duty under the Supremacy Clause to protect constitutional rights as his highest order duty and to declare unconstitutional any state policy conflicting with this duty.

10)  Plaintiff seeks preliminary declaratory relief upon his demonstration that he is suffering ongoing irreparable injury through JPL's ongoing violations of judicial duty imposed upon JPL by the Supremacy Clause, and accepted by JPL in his taking of the judicial oath, those violations being imposed under color of the state Scheme that actively and intentionally prevents vindication of federal rights in state courts and that impermissibly increases the burden of seeking federal relief in a federal court.

11)  Plaintiff seeks permanent and preliminary declaratory relief holding the state's Civil Law PostDivorce Child Custody Regulatory Scheme and particularly the state's best interests of the child policy to be in direct conflict with federal constitutional law and subject to the full body of federal law protecting the fundamental rights at interest where the federal constitution provides zero exception to those protections when the state seeks to regulate intimate and expressive, close family speech, association, worship, and family privacy interests as a consequence for fit parents of minor children making choices regarding marriage that the state

disfavors by inserting the state's interests into a civil suit between private parties without the state demonstrating standing to do so.

12)     Plaintiff seeks a holding from this Court that federal constitution bars the state of Mississippi from depriving Plaintiff, as a minor child, of his fundamental rights as a consequence of the otherwise lawful and constitutionally protected privacy choices made by his adult fit parents over which he has NO control and NO constitutional right to intervene because such state punishment of children for the perceived sins of their parents is illogical, unjust, and NOT rationally related to the state's asserted interest in protecting Plaintiff's best interests.

13)     Plaintiff seeks a holding from this Court that state court judges are prohibited from issuing judicial relief intended to bind federally protected fundamental rights issued in the interests of a non-party non-litigant who has suffered NO judicially redressable concrete injury that can be legally traced to any unlawful conduct by either of the litigants before the court and where the non-party has NOT appeared, has NOT provided Notice, has NOT been subjected to Confrontation, and has NOT been subject to Cross-Examination regarding any allegations of concrete injury, traceability, or redressability.

14)     Plaintiff seeks a holding from this Court that JPL is constitutionally prohibited from irreparably injuring Plaintiff through issuance of judicial orders particularly where those orders are justified as being in Plaintiff's best interests.

## STANDING

15)     Plaintiff has standing to pursue this allegation because his rights protected by the First, Fourth, and Fourteenth Amendments (1A, 4A, and 14A

respectively herein) of the federal constitution as applied to the state of Mississippi's state action through the Fourteenth Amendment provide well-established constitutional guarantees protecting Plaintiff from the actions taken by Defendant who took action as a state official vindicating state policy interests and as a state court judge claiming to issue judicial relief authorized by the law of the land of Mississippi to adjudicate his own regulatory actions while failing to respect constitutional guarantees limiting his authority and jurisdiction to interfere with Plaintiffs rights or to provide judicial relief in Plaintiff's interests which resulted in multiple violations of Plaintiffs' rights and fundamental rights as stated herein.

16) Defendant is the sole state official to hold state authority of any kind over the state's policy interests. Thus. where the state's broad policy must be applied to individual in unique situations by developing the state's specific policy interests as to those individuals in their unique situations such that the state may impose rules governing the future conduct of those individuals relative to each other and relative to Plaintiff, Defendant can NOT reasonably deny that he is the state's policy vindication or regulatory agent who is liable to defend the state's policy interests and his own policy vindication actions in a §1983 suit brought against him in his official capacity as the state's sole regulatory agent. In this capacity, Defendant can claim only the limited immunity to which any Executive Branch state regulatory officer with comparable regulatory duties is entitled.

17) Civil law mandated bias in favor of a state policy choice is contrary to the judicial role and the Supremacy Clause mandated judicial duty. A state determination with a mandated outcome in favor of any given individual is contrary to judicial

determinations that must be made by neutral and impartial judicial decision-makers who are independent from any state interest in a mandated outcome. It simply is NOT possible for mandated relief in the interests of a non-party non-litigant who lacks standing to be a litigant to be judicial relief. The constitution forbids it as a jurisdictional, due process, equal protection issue, and separation of powers issue.

18)     To the extent that JPL entered the proceedings intent on vindicating the state's policy interests against the fundamental rights of Plaintiff and against the fundamental rights of the litigants before the court and intended to subsequently sit in judicial judgement of his own policy vindication actions, JPL is NOT entitled to the defense of judicial immunity because he entered the proceedings in knowing and intentional violation of subject matter jurisdiction knowing he was incapable of forming a competent court even before he violated rules of standing which he intended to do prior to the proceeding's initiation and which he has done in many previous proceedings of the same class applied to civil litigants and children of the same class.

19)     There exists NO set of circumstances under which such a biased exercise of discretion resulting in a predetermined outcome can be legally classified as an act of judicial discretion and JPL was NOT acting as a judicial officer when he exercised that discretion in this case.

## EXPECTATIONS OF PRIVACY

20)     Plaintiff, as a minor child, is entitled to the full extent of constitutional protections for his private interests as those interests are protected by each of his fit parents exercising their parental rights on his behalf as against the unwarranted

intrusion by the state of Mississippi and by JPL that was initiated by JPL under color of Mississippi law in this case.

## INJURIES

21)     Plaintiff has suffered the irreparable injury of being subject to viewpoint-based prior restraints on the times, the places, and the manner in which he is permitted to speak with, associate with, worship with, share family privacy with, and be under the constitutional protection of his fit parents, particularly of his father who has been jailed for more than five years under the absurd state claim that depriving Plaintiff of his fit father by use of the contempt power to imprison for refusing to surrender his federally protected fundamental rights to JPL's unjustified broad exploratory searches and seizures is somehow in Plaintiff's best interests.

22)     Plaintiff has been substantially denied the knowledge and wisdom of his father's teachings, the comfort and security of being in his father's legal custody and of the vital benefits derived from experiencing the mundane routines of daily life with his father as a minor child, vital life experiences that can NEVER be restored, that were taken from him upon the mere viewpoint of a sole state official regarding matters of conscience in child-rearing and private matters of family life without any of the constitutional guarantees mandated for the protection of these rights being afforded by JPL as a state judicial officer.

23)     The federal constitutional parental presumptions, as expressed in *Troxel* and ignored by JPL, is supposed to protect Plaintiff, and children like Plaintiff, from overzealous imposition of state policy interests by state court judges acting as state

regulators and censors and Plaintiff asks this Court to properly apply the parental presumptions towards his protection here.

24) Each and every one of these irreparable injuries could have been prevented had any one of the many attorneys involved in these proceedings actually performed their fiduciary duty to protect their client's fundamental rights rather than conspire with their clients to invoke a blatantly unconstitutional Nineteenth Century bastardy code to unlawfully deprive the other parent of fundamental rights in fundamentally unfair proceedings before a judge who has openly declared his intent to violate the fundamental rights of litigants in favor of his personal viewpoint of the best interests of a non-party non-litigant child whose fundamental rights are undeniably violated by the viewpoint-discrimination. Every single attorney in these proceedings is culpable for the my irreparable injuries, for irreparably injuring children for money.

25) What do they actually teach attorneys in law school? It can't possibly be constitutional law as the supreme law of the land that by the extremely clear terms of the Supremacy Clause preempts the state's absurdly unconstitutional best interests of the child policy as unequally applied to divorced parents and their children as blatant punishment for the exercise of fundamental rights the state disfavors.

## SUMMARY OF FACTS

26) On February 29, 2012, Plaintiff's parents chose to divorce one another and filed a petition for divorce with the state of Mississippi notifying Mississippi of their fundamental speech and associational privacy choices so that the state of Mississippi could remove the benefits the state provides to married couples.

27)     As a consequence of this otherwise lawful and protected privacy choice
and the mere filing of a petition, the state of Mississippi unconstitutionally punished
Plaintiff with loss of fundamental rights by terminating Plaintiff's rights to his fit
parents, by seizing complete dominion over Plaintiff, by terminating Plaintiff's speech
and association rights with his fit parents, and by claiming state authority, without
regard to federal or state constitutional limitations, to license back partial dominion
over Plaintiff to one, both, or neither of his fit parents, to censor Plaintiff's speech with
his fit parents, and to replace Plaintiff's fundamental rights to his parents with the
issuance of a limited parental license subject to ongoing viewpoint-discrimination.
Following which, the state claimed authority to compel Plaintiff's parents to petition
the state for permission to exercise dominion over Plaintiff, for permission to speak
with Plaintiff, for permission to associate with Plaintiff, for permission to worship with
Plaintiff, for permission to share family privacy with Plaintiff, and for permission to
live together as a family with Plaintiff where the state openly refuses to provide
mandatory constitutional protections against prior restraints or state censorship just
as it openly refused to provide constitutional protections to Black persons under the
Jim Crow laws.

28)     Plaintiff's father has asserted that fundamental rights protecting Plaintiff
were and are at risk of erroneous deprivation in the trial court proceedings. Federal
constitutional mandate holds that the trial court is duty bound to make a finding of
what process is due. The trial court has rejected this duty as inapplicable in this case.
By operation of law, the only way that duty could be inapplicable is if due process

protections do not apply. Due process protections applied up to the moment the divorce or child custody petitions were filed but ceased to apply the moment after.

29) During the course of temporary preliminary proceedings, JPL compelled Plaintiff's father to work for the benefit of another person under state compelled child support, where the state has impermissibly removed the duty of children to repay their parents for that care. The removal of the bilateral duty of care subjects the state's child support scheme to Thirteenth Amendment limitation but the state provides NO means by which the state created conditions of servitude may be challenged by the enslaved.

30) This child support was a seizure of property from Plaintiff's father issued by a judge who had a personal regulatory and pecuniary interest in the issuance of the child support seizure order and thus was prohibited by the Fourth Amendment from issuing the seizure order.

31) This child support order was a seizure conducted by a judicial officer who failed to hold the state to its mandatory duty to provide a pre-deprivation hearing where the individual subject to seizure could challenge the state seizure of property interests under the constitutional presumption that such seizures are unconstitutional until justified in an adequate deprivation hearing. Child support seizures of any amount are declared exempt from Fourth and Thirteenth Amendment limitations where not even a neutral and unbiased magistrate is necessary.

32) This child support order deprived Plaintiff of the benefit of his father's speech and direction that is established by his father's willingness to spend money beyond the minimum reasonable standard of childcare applicable to all parents in support of Plaintiff's childhood desires in exchange for Plaintiff submitting to the care

of and accepting the knowledge and wisdom of his fit father in bilateral exchange. In this manner the child support order was both an impermissible means of imposing state censorship and an impermissible means of compelling Plaintiff's father to pay for Plaintiff's mother's speech to be enhanced and to be sought out by Plaintiff as a means of gaining discretionary expenditures that his father was made unable to provide by state action.

33)    This child support judicial order asserted to be in Plaintiff's best interests classified Plaintiff's father as a parent subject to the punishment of imprisonment through contempt and through state and federal criminal statutes imposing criminal liabilities and the loss of physical freedom on Plaintiff's father as a class of father, classified by his exercise of a fundamental privacy choice and the viewpoint of a sole state official that Plaintiff's father was the "less-than-best" parent where Plaintiff had NOT established standing to receive judicial relief issued in his interests.

34)    The state of Mississippi receives a yearly federal payment based upon the amount of child support it orders through these unconstitutional means and the amount of child support it collects through these unconstitutional classifications and penalties under Title IV-D of the Social Security Act. Title IV-D provides NO congressional mandate that these child support classifications or collections should be subject to any constitutional guarantees of any kind. Title IV-D provides a pecuniary benefit directly to the state in support of the state's unconstitutional policies that are unconstitutionally protected against federal question constitutional challenge by JPL and other judges just like him.

35)   JPL holds a judicial office that likely would NOT exist if constitutional guarantees were provided to children such as Plaintiff. In the absence of standing and subject matter jurisdiction, JPL's actions are administrative and regulatory. Because policy regulation under the Separation of Powers Doctrine must be provided by the Executive Branch, if the constitution were followed, JPL and every other state court judge would experience a significantly diminished case load raising the specter of significantly reducing the number of state court judges to offset the regulatory costs.

36)   Where fundamental rights of parent and child are adequately protected by the least restrictive means test before neutral and impartial judges who took NO part in the policy choices being litigated, parents and children would be ensured that their federally and individually protected rights of speech and association with one another would be fully and equally protected unless a party could demonstrate a compelling interest and narrowly tailored authority to provide a different outcome.

37)   Challenges to the equal rights of the parents would be subject to summary dismissal under strict scrutiny for the failure to demonstrate compelling justification for judicial relief. The scope and resulting cost of litigation would be significantly limited. Child support awards would NO longer be the lottery ticket win they are today. Without that financial incentive, parents might just learn to get along with one another.

38)   One thing is certain, JPL would very likely find himself without gainful employment as a state court judge under these conditions and this establishes a personal pecuniary interest for JPL to ensure that the state's policies are never

subjected to adequate constitutional review in his trial court ensuring that his judicial position remains secure.

39)     It is under these conditions that JPL has exercised powers of judicial equity in direct conflict with controlling federal law, and in complete violation of the conditions authorizing judicial equitable powers, to unconstitutionally deprive Plaintiff of his fit father by jailing Plaintiff's fit father for failure to comply with JPL's unconstitutional seizure order. Plaintiff's father did NO more than exercise a federal fundamental constitutional right to provide the mandatory minimum reasonable standard of childcare for Plaintiff directly and personally without unwarranted state interference in his ability to do so. Here the state has proven no facts and has NOT even appeared to assert facts in support of its seizure policy. The only facts before the court are that the parties exercised the fundamental right of close family association, to divorce one another, and that a sole state official formed a state opinion, after conducting an exploratory search into constitutionally protected privacy interests, that Plaintiff's father was the "less-than-best" parent and upon that basis alone, subjected Plaintiff's father to unconstitutional seizure of his property to enhance the state's Title IV-D payments and to protect JPL's job.

40)     JPL did NOT even enquire as to whether Plaintiff's father had ever failed to meet minimum reasonable standards of care for his child but rather presumed that divorced parents, as second-class parents, could be presumed to be unwilling to directly care for their own children.

41)     Additionally, JPL attempted to unconstitutionally seize Plaintiff's father and compel him to speak against his will and against his own legal interests in judicial

proceedings where his attorney was NOT permitted to be present in a psychological evaluation where Plaintiff's father was compelled to prove his competency as a parent, in direct violation of federal parental presumptions, as penalty for exercise of a fundamental right and further to prove not only that he was a fit parent but that he was the "best" parent and therefore entitled to the best limited parental license rather than being the "less-than-best" parent and therefore entitled only to the less-than-best parental license if in JPL's sole viewpoint he was entitled to any parental license at all.

42) When Plaintiff's father asserted his fundamental rights as protection against the compelled seizure and the compelled speech against his legal interests without the presence of his attorney, Plaintiff's father was denied fundamentally fair process where he could vindicate his fundamental rights against the states policy interests as vindicated by JPL and JPL unconstitutionally exercised judicial equitable authority to imprison Plaintiff's father until such time as Plaintiff's father agreed to surrender his fundamental rights to the viewpoint of a sole state official.

43) As a consequence of Plaintiff's father asserting his fundamental rights protections against JPL's state action vindicating state policy under color of state law, Plaintiff's father was imprisoned and Plaintiff was unconstitutionally deprived of speech and association with his fit father, in Plaintiff's best interests of course, or at least in JPL's viewpoint of Plaintiff's best interests, without regard for any mandatory protections being afforded Plaintiff's fundamental rights. This constitutes ultra vires action that irreparably injures Plaintiff which cannot possibly be rationally related to acting in Plaintiff's best interests which is the sole source of JPL's asserted authority to issue the orders that resulted in Plaintiff's father being imprisoned.

44)     Plaintiff's fit father has been unlawfully incarcerated for more than five years under the sole asserted state interest of acting in Plaintiff's best interests by violating Plaintiff's fundamental rights of speech and association with his fit father on the mere viewpoint of a sole state official acting in direct conflict with controlling federal law and in direct conflict with Plaintiff's best interests.

45)     Now with only months to go before Plaintiff reaches the age of majority, JPL is rushing to hold a final trial on Plaintiff's best interests where Plaintiff has NOT established standing and where Plaintiff rejects that he has any standing of any kind to have his interests asserted in his parents' litigation of their individually and federally protected parental rights over Plaintiff.

46)     While Plaintiff remains a minor for a number of months, Plaintiff is far beyond the age where either of his fit parents or JPL may assert an absolute veto over his fundamental right to challenge the irreparable injury that has been done to Plaintiff by the state of Mississippi and its policy vindication regulatory agent, JPL.

47)     Plaintiff files this Petition to declare JPL's claim of judicial authority to litigate Plaintiff's best interests and provide judicial relief against Plaintiff's fundamental rights, where Plaintiff has NOT establish standing to have his interests litigated and could NOT establish standing against either of his fit parents in their private dispute regarding their own individually protected parental rights, to be untenable and unconstitutional as a standing and subject matter jurisdictional issue, as a due process issue, and as an equal protection issue.

48)     Plaintiff does claim to have standing to sue JPL and though him the state of Mississippi to have the state's Civil Law PostDivorce Child Custody Regulatory

Scheme policy interests declared unconstitutional on their face and as applied to Plaintiff for the reasons asserted herein under the federal law cited by Plaintiff under standards of constitutional review applicable to the protection of the Plaintiff's fundamental rights as established herein and because JPL's irreparable injury to Plaintiff can NOT be held to be rationally related to the furtherance of the state's asserted goal of acting in Plaintiff's best interests nor within the scope of constitutionally authorized judicial authority under equity or as delegated by the state's civil law.

49)     Beau McPhail's affidavit is attached and incorporated by reference herein.

## COMPLAINT

### CLAIM 1

*JPL is irreparably injuring Plaintiff and his fit parents in a manner that is NOT rationally related to acting in Plaintiff's best interests by entering judicial proceedings, as a state judge, to exercise state power in favor of the state's Civil Law PostDivorce Child Custody Regulatory Scheme policy interests by applying its grant of "broad" discretion to impose viewpoint-based prior restraints on the times, the places, and the manner in which Plaintiff may speak with, may associate with, may worship with, may share family privacy with, and may be under the protection of parental privacy choices by his fit parents—state action that is justified by a merely "substantial" state interest—after conducting a broad exploratory search under the guise of litigating his own viewpoint of Plaintiff's best interests—a non-party, non-litigant, without standing to be a litigant—to achieve the predetermined judicial outcome of authorizing his own state regulation of First*

*Amendment protected interests as the state's sole regulatory official, and then sitting in judgement of his own regulatory actions, as the sole judicial officer holding jurisdiction over his own regulatory actions against Plaintiff and his fit parents, in a manner designed to deprive Plaintiff and his fit parents of any opportunity to vindicate their federal rights in a competent state court before a neutral and impartial judicial decision-maker who is not predisposed to rule against Plaintiff's and his fit parent's constitutional rights, in favor of state policy interests that directly conflict with those federally and "individually" protected fundamental rights in open defiance of controlling federal law, in open bias against the Supremacy Clause, and in a manner designed to protect his own ultra vires state actions from judicial review in a federal district court by means of absolute judicial immunity from suit for his purely regulatory state action and for his predetermined judicial decision-making regarding his own regulatory action.*

## CLAIM 2

*Determinations of Plaintiffs best interests by JPL applied to regulate future behavior, future conflicts, and future speech are NOT judicial actions but are rather regulatory policy choices resulting in merely advisory opinions that are powerless to bind Plaintiff's or his Parents' fundamental rights.*

## ARGUMENT

### INTRODUCTION AND JUDICIAL IMMUNITY

50)   My best interests can only be served where state courts fully and completely protect my constitutional rights to be free from unwarranted state interference in my private intimate and expressive, close family, parent child associations where those associations form two distinct constitutionally recognized

and individually protected family units. My association with my mother is constitutionally protected and my association with my father is equally protected as individual family units by the federal constitution where we each exercise our individual rights of association with one another to form the protected associational pairing.

51)     Rather than protecting my constitutional rights, JPL is actively serving the state's policy interests in direct conflict with my federally protected constitutional rights which can, in NO way, be rationally related to acting in my best interests. JPL holds that upon the divorce between my parents or upon their filing a child custody petition, my federally protected interests in preserving each of these family units fully and completely are terminated and JPL becomes empowered with unbridled discretion to violate my rights provided JPL merely asserts it to be in my best interests for him to do so, even in the face of definitive proof that JPL is actively irreparably injuring me by his ultra vires actions.

52)     JPL's open embrace of broad and expansive regulatory authority over First Amendment protected interests, granted to him under the state's Civil Law PostDivorce Child Custody Regulatory Scheme that itself establishes a legal conflict between me and the state of Mississippi, and his predetermination of the outcome of judicial proceedings has established a justiciable legal conflict between himself and my fundamental rights.

53)     I seek protection from JPL's unconstitutional actions that irreparably injure me by depriving me of First Amendment protected interests in each of these protected family units without providing those guarantees for my rights mandated by

the federal constitution and federal judicial interpretations of that supreme federal law. JPL is demonstrating a fundamental bias against my federally protected rights and against controlling federal law that makes JPL incapable of establishing a court competent to provide minimum standards of fundamental fairness.

54)    The Supremacy Clause imposes on state court judges a preemptive supreme duty to protect constitutional rights against every conflicting exercise of state authority, even in child custody disputes between fit parents, through the phrase "the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."[2] The Supreme Court has expressed this duty in the following clear and definitive terms, see Felder v. Casey, 487 US 131, 151 (1988):

> the Supremacy Clause imposes on state courts a constitutional duty to proceed in such manner that all the substantial rights of the parties under controlling federal law are protected.

55)    The Court has held so in an unbroken chain of holdings reaching back to *Marbury*, see Burt v. Titlow, 134 S. Ct. 10, 15 (2013); Haywood v. Drown, 556 US 729, 129 S.Ct. 2108, 2114 (2009); Howlett v. Rose, 496 US 356, 374 (1990); Pennhurst State School and Hospital v. Halderman, 465 US 89, 138 (1984); Dennis v. United States, 339 US 162, 168 (1950); Robb v. Connolly, 111 US 624, 637 (1884); Cohens v. Virginia, 19 US 264, 414 (1821); Marbury v. Madison, 5 US 137, 178 (1803).

56)    Nowhere in the entire body of Supreme Court jurisprudence is there to be found any holding that child custody suits between fit parents are exempted from

---

[2] Art. VI, US Const. Supremacy Clause

constitutional review under broadly applicable established standards. Despite significant personal bias displayed against divorced parents and their children in the Court's obiter dicta, the Court's holdings clearly mandate established standards of constitutional review be applied to the child custody court judge's best interests of the child determination in custody suits between fit parents and likewise the constitutional duties of state courts judges to protect constitutional rights is absolutely clear.

57)    Before he could become a judge, JPL was required to swear an Article VI oath to be bound by the Supremacy Clause's terms "anything in the Constitution or laws of any State to the contrary notwithstanding" in order to hold his judicial office.

58)    The state's best interests of the child policy directive requires JPL to openly reject this oath, as applied to this class of civil litigant parent and this class of minor child. JPL has openly embraced the state's policy directive in direct opposition to the controlling federal law he has sworn to apply against any and all conflicting state law or state policy directives. JPL's open rejection of the minimum requirements of holding judicial office and his open rejection of the judicial neutrality, impartiality, and independence that underpins the policy of judicial immunity should be held to deprive him of any claim to judicial immunity as a defense against this civil rights action.

59)    In *Palmore*, the Court stated"—dicta—that "The court correctly stated that the child's welfare was the controlling factor" which might lead some to wrongfully assert that the child's welfare preempts the Supremacy Clause. However, the Court "held"—controlling—in *Palmore*, *"The question, however, is whether the reality of*

*private biases and the possible injury they might inflict are permissible considerations for removal of an infant child from the custody of its natural mother. We have little difficulty concluding that they are not."* The trial court's viewpoint of the child's welfare is absolutely secondary to the federal constitutional protections that protect the child's welfare from the ultra vires actions of the trial court. The "child's welfare" can NOT be furthered by irreparably injuring the child.

60)     In its holding limiting the scope of a child custody judge's best interests of the child determination, the Court held that "Public officials sworn to uphold the Constitution may not avoid a constitutional duty by bowing to the hypothetical effects of private racial prejudice that they assume to be both widely and deeply held." Id. There is NO legitimate distinction between this prohibition and the prohibition against permitting the state policy of best interest to preempt controlling federal policy or JPL's Supremacy Clause duty to protect constitutional rights.

61)     At a bare minimum, to be entitled to the defense of judicial immunity, JPL should be required to prove that his actions in these proceedings, taken while openly rejecting his constitutionally mandated duties, were strictly judicial and exercised in compliance with full judicial integrity towards providing fundamentally fair processes and full compliance with constitutional mandates before issuing dispositional relief.

62)     Plaintiff asserts a due process right to full litigation of the distinctions between judicial action and policy vindication action in child custody suits between fit parents and in the relative priority between the state's best interests of the child policy and the Supremacy Clause's rule of decision before JPL is permitted to receive judicial immunity relief from this Court. Plaintiff asserts that it is JPL's actions rather than his

office that must be applied to determine if judicial immunity applies, and that open intentional rejection of judicial duty must be accompanied by disqualification for the judicial immunity defense as a matter of standing to assert the defense. It is NOT possible for a private individual to intentionally reject a fundamental right and then claim it as a defense and there is NO equal protection justification for any judge to be treated any differently. If this prevents some people from seeking to become judges, those people should NOT be permitted to be judges because they are incapable of fulfilling the judicial oath or abiding by the terms of the Supremacy Clause; far better to have not enough judges than to have evil judges.

63)     Plaintiff asserts that particular care should be taken in developing the record in this regard precisely because this Court and JPL share a common interest in preserving the judicially established defense of judicial immunity against Plaintiff's interests in holding JPL accountable for his vindication of state policy interests exercised in direct conflict with Plaintiff's constitutional rights.

## STANDING, SUBJECT MATTER JURISDICTION, ADVISORY OPINIONS

64)     The absence of standing to entertain Plaintiff's interests or to issue judicial relief in Plaintiff's interests and JPL's clearly articulated prior intent to vindicate state policy interests against the fundamental rights of Plaintiff and the litigants before JPL's court is all that is necessary under federal law, under Supreme Court verified common law standards, and under Mississippi state law for the issuance of judicial relief, and under the limitations on judicial equitable authority articulated in *ebay* to authorize this Court to issue the injunctive and declaratory relief requested herein, see eBay Inc. v. Mercexchange, Ll, 547 US 388, 391 (2006):

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury;

> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

> (4) that the public interest would not be disserved by a permanent injunction...

The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

65)     See also <u>Paulsson Geophysical Services, Inc. v. Sigmar</u>, 529 F. 3d 303, 309

(5th Circuit 2008):

A court should issue a preliminary injunction if the movant shows

> (1) a substantial likelihood of success on the merits,

> (2) a substantial threat of irreparable injury if the injunction is not issued,

> (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and

> (4) that the grant of an injunction will not disserve the public interest.)

66)     The judicial authority under the Separation of Powers Doctrine must be limited by a properly presented justiciable conflict wherein judicial relief can legitimately resolve the underlying conflict. In this case, the state and JPL are intentionally vague regarding the nature of the legal conflict that JPL is asserting

judicial authority to resolve which unduly burdens Plaintiff's ability to challenge the state action. This failure is unconstitutional because without clear articulation of the legal conflict, the record can NOT demonstrate that the relief provided by the court legitimately resolved the conflict.

67)     The Supreme Court applied the Standing Doctrine to resolve no less than three high profile cases in 2023, one of which was a child custody case concerning the protections provided for American Indian children under federal law.

68)     Mississippi standing law is well-established, holding that standing is an essential element of the trial court's subject matter jurisdiction, see <u>Schmidt v. Catholic Diocese of Biloxi</u>, 18 So. 3d 814 (Miss: 2009):

> 13. Subject matter jurisdiction is a threshold inquiry which must. be determined before a court may proceed to the merits... 14. When a plaintiff's allegations of jurisdiction are questioned, the plaintiff bears the burden to prove jurisdiction by a preponderance of the evidence... 32. Standing is an aspect of subject matter jurisdiction... A lack of standing robs the court of jurisdiction to hear the case.

69)     The question of standing in the civil suit between his parents is whether Plaintiff can be legally injured by his parents' exercise of their fundamental right to divorce one another and whether Plaintiff can be legally injured by either of his fit parents seeking to protect their parental rights in a state court child custody proceeding against the other parent or against the state's family code.

70)     Plaintiff makes NO claims of constitutional right to have married parents or to take parental rights from either of his fit parents to serve his own interests as a minor child either because they divorce one another or because they enter into a justiciable dispute regarding their respective exercise of their federally and

individually protected fundamental parental rights. Plaintiff asserts and can assert NO concrete injury under either of these circumstances.

71)    The question of standing in this federal case is whether the Mississippi family code and JPL's actions applied in direct conflict with Plaintiff's constitutional rights establishes standing for Plaintiff to challenge the state's family code and JPL's regulatory or judicial actions that created irreparable concrete injury to Plaintiff that is fairly traceable to an unconstitutional application of the state's civil law and an unconstitutional exercise of judicial equitable authority by a state court judge issuing punitive judicial orders resulting from his own policy vindication investigation, authorized by presumptive warrants he issued in support of his own investigatory actions, that classified one fit parent as being subject to state and federal criminal penalties for the failure to pay a debt while protecting the other parent from criminal liability and resulting in Plaintiff's father being unlawfully imprisoned in violation of Plaintiff's fundamental rights.

72)    Where fundamental rights are at issue, the absence of demonstration in the record proves the state's failure to overcome the presumption of unconstitutionality in regulating fundamental rights, in issuing viewpoint-based prior restraints, and in establishing the basic mandatory elements of standing to receive judicial relief "in Plaintiff's interests" as mandated by the state's civil law.

73)    This Court need NOT perform appellate review of the trial court's order to provide the relief herein requested and Plaintiff has NO standing to ask this Court to exercise appellate jurisdiction over the state trial court order. Plaintiff seeks protection from an unconstitutional state civil code that grants regulatory authority to a state

court judge and simultaneously grants judicial authority to that same state court judge to declare his own regulatory actions to be judicial in nature and constitutional against all the evidence and in direct conflict with the Separation of Powers Doctrine. That doctrine exists in part to ensure access to neutral impartial judicial decision-makers who are NOT predisposed to vindicate the state's policy interests against the rights of litigants before the court. The trial court's orders are merely evidence proving that the regulatory actions took place in the manner and under the justifications Plaintiff asserts.

74) Before this Court applies any abstention doctrine, Plaintiff demands his right to fully litigate a challenge to the orders in question under the State Action Doctrine and other applicable federal law as being "regulatory" rather than "judicial" orders that are incapable of justifying abstention. Should an abstention doctrine be applied because the orders are deemed judicial, Plaintiff challenges the abstention doctrine itself as impermissibly depriving Plaintiff of both a competent state court and a competent federal court in which to vindicate his federal rights against violations imposed via state judicial actions where he was NOT a party, did NOT have standing to be a party, did NOT appear, and was Never served notice where the right of access to a competent court is fundamental.

75) Questions of standing, subject matter jurisdiction, and constitutional violations by a state court critically depend upon the nature of the legal dispute that invokes the court's judicial authority. Here, the trial court relies on historical misconceptions about how family rights are protected by the federal constitution in the Twenty-First Century and carefully avoids clarifying precisely what legal conflict

provides the source of the trial court's judicial authority, because that would demonstrate dramatically limited state authority to regulate intimate and expressive, close family, parent-child speech and association as punishment for parents of minor children choosing to divorce one another and zero jurisdiction to regulate these issues through judicial action.

76) The state can NO longer compel people to remain married nor punish children for the marital choices of their parents. There is NO legal fault to be found in in the free exercise of First Amendment protected speech and associational rights deemed fundamental and thus NO possibility of judicial subject matter jurisdiction to issue viewpoint-based prior restraints arising from the exercise of these rights.

77) If the dispute arises because the state asserts that parental rights are controlled by a marriage between the child's parents and are thus de facto terminated upon divorce between those parents, that assertion was discredited and held unconstitutional in the Bastardy Cases of the 1970's where the Court held that parental rights and the rights of children to their parents are individual rights without legal dependency upon a marriage between the child's parents and that children could NOT be punished for the otherwise lawful marital choices of their parents, see Weber v. Aetna Casualty & Surety Co., 406 US 164, 175 (1972):

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing.

78) See also Stanley v. Illinois, 405 US 645, 651, 652 (1972):

Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony. The Court has declared unconstitutional a state statute denying natural, but illegitimate, children a wrongful-death action for the death of their mother, emphasizing that such children cannot be denied the right of other children...

79)     See also Levy v. Louisiana, 391 US 68, 71, 72 (1968), Mathews v. Lucas, 427 US 495, 505 (1976), Parham v. Hughes, 441 US 347, 358 (1979), Pickett v. Brown, 462 US 1, 8, 9 (1983), Cleburne v. Cleburne Living Center, Inc., 473 US 432, 453 (1985), Jimenez v. Weinberger, 417 US 628, 637 (1974), Mills v. Habluetzel, 456 US 91, 92, 93 (1982), Gomez v. Perez, 409 US 535 (1973).

80)     Plaintiff seeks a holding that, it is illogical and unjust to deprive Plaintiff of constitutional guarantees for his protected interests with his fit parents as a consequence of his parents making an otherwise lawful and constitutionally protected choice about their marriage to one another or for their seeking constitutional protections for their parental rights in a state judicial proceeding.

81)     Here the state impermissibly presumes that parental rights terminate upon the filing of divorce and impermissibly presumes that fit parents enter into the child custody proceedings without any federally protected parental rights or even those most basic rights of fundamentally fair processes to which all other civil litigants are entitled. As a consequence, Plaintiff's rights to his parents are presumed to be terminated by his parents otherwise lawful and protected choices regarding marriage and he is denied fundamental fairness protections for his constitutional rights by this presumption.

82)    The choice to divorce is an associational choice regarding an intimate and expressive close family association that is fully protected by the First Amendment, see <u>MLB v. SLJ</u>, 519 US 102, 114-117 (1996):

> on many occasions we have recognized the fundamental importance under our Constitution of the associational interests that surround the establishment and dissolution of the marital relationship. Although obtaining a desired new start in life is important, that interest does not rise to the same constitutional level as the interest in establishing or dissolving a marriage.

> Choices about marriage,[3] family life, and the upbringing of children are among associational rights this Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect.

83)    The Court errs if it reads the Supreme Court's opinion as protecting association only through the Fourteenth Amendment, because the rule is that the First Amendment is fully incorporated into the Fourteenth Amendment and thus when the Court holds a right protected by other specific amendments to be protected against state action by the Fourteenth Amendment, the Court is saying that the specific amendment protects the rights against state action via incorporation.

84)    Choices regarding protected associations are protected as choices regarding protected speech, applying in the positive sense of being able to speak and associate freely, and also in the negative sense of being able to choose NOT to speak and NOT to associate just as freely. To say that individuals are free to enter into an

---

[3] Of significant note is that the constitution protects "choices 'about' marriage" NOT just the narrowly scoped choice "to" marry which deprives the state of any authority to compel individuals to marry or to compel individuals to remain married. The very concept that the state has jurisdiction to "grant" a divorce establishes a federal question conflict with the individual right to make choices about marriage and the state's assertion of authority to regulate intimate and expressive, close family, marital associations. The fact that state's have historically violated our most fundamental rights can NOT justify the state's continuing violation against a direct federal question challenge.

intimate and expressive marital association but are NOT free to exit from that marital association is to say that people are empowered to speak freely but once they have begun to speak are NO longer empowered to stop speaking. The right NOT to speak and the right NOT to associate are fully protected by the First Amendment, see Janus v. AMERICAN FEDERATION OF STATE, 138 S. Ct. 2448, 2463 (2018):

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech. We have held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all."... "Freedom of association . . . plainly presupposes a freedom not to associate..."

85) Plaintiff's parents choosing to stop speaking and associating in an intimate and expressive marital association is an exercise of First Amendment right which the state may NOT punish and for which the state certainly may NOT punish Plaintiff.[4]

86) Consequently, Plaintiff seeks a holding that parental rights and the concomitant rights of the child are individual rights, independent of any marital association between the child's parents, protected as intimate and expressive, close family, parent-child speech, association, worship, and family privacy, the constitutional protections for which may NOT in any manner be lessened because those parents made otherwise lawful and constitutionally protected choices regarding marriage that the state may disfavor or because fit parents file a child custody petition.

87) If the alleged legal conflict arises because the fit parents disagree regarding child-rearing issues, the legal conflict is nonjusticiable because the right to

---

[4] Weber, supra. Stanley, supra.

disagree on matters of conscience in child-rearing is absolutely protected by the First Amendment and the state has zero legitimate interest in inserting itself into disputes regarding matters of conscience, see <u>Graham v. Richardson</u>, 403 US 1449, 1450 (1971):

> What the Constitution says is that value judgements are for the individual to make, not for the Government to decree, even with the mandate or approval of a majority.

88)    See also <u>Texas v. Johnson</u>, 491 US 397, 408, 409 (1989), (a principal function of free speech under our system of government is to invite dispute.); <u>Schneiderman v. United States</u>, 320 US 118, 138, 139 (1943), (the principle of free thought — not free thought for those who agree with us, but freedom for the thought that we hate.)

89)    Some issues regarding child-rearing are beyond any court's authority to resolve, see <u>Palmore v. Sidoti</u>, 466 US 429, 433 (1984):

> The question, however, is whether the reality of private biases and the possible injury they might inflict are permissible considerations for removal of an infant child from the custody of its natural mother. We have little difficulty concluding that they are not. The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect. "Public officials sworn to uphold the Constitution may not avoid a constitutional duty by bowing to the hypothetical effects of private racial prejudice that they assume to be both widely and deeply held."

90)    Consequently, Plaintiff seeks a holding that disagreements between fit parents regarding matters of conscience in child-rearing are non-justiciable matters over which the state has zero jurisdiction and judges are powerless to resolve.

91)    No matter how the state defines the underlying conflict asserted to justify the application of judicial authority to regulate intimate and expressive, close family

speech and association, Plaintiff, through the exercise of fundamental right by his fit parents, is entitled to challenge the legitimacy of that underlying conflict in a full confrontation pre-deprivation hearing initiated by the state where the parents are provided their mandatory right to challenge the state's civil law assertions of authority to regulate First Amendment protected family rights by challenging the legal conflict established by the state's civil law.

92)     Given that JPL has permitted the state to regulate fundamental rights protected by the First Amendment by authorizing him to issue viewpoint-based prior restraints without holding himself or the state to any burden of proof to overcome the presumption of unconstitutionality in state regulation of fundamental rights and without demonstrating in the record that JPL has provided any of the constitutionally mandated protections against such regulation and the issuance of viewpoint-based prior restraint equitable relief, the state's Civil Law PostDivorce Child Custody Regulatory Scheme remains presumptively unconstitutional as applied to deprive Plaintiff of fundamental rights either directly or indirectly by depriving his fit parents of their fundamental rights to protect Plaintiff from overzealous state action, see Harris v. McRae, 448 US 297, 312 (1980):

> It is well settled that, quite apart from the guarantee of equal protection, if a law impinges upon a fundamental right explicitly or implicitly secured by the Constitution it is presumptively unconstitutional.

93)     Plaintiff, as a minor child, has First Amendment protected interests in his own right protecting him from violation through state action taken under the premise that the state may protect Plaintiff from the speech and association of his fit father, see Brown v. Entertainment Merchants Ass'n, 564 US 786, 131 S.Ct. 2729-2736 (2011):

Minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them...

No doubt a State possesses legitimate power to protect children from harm... but that does not include a free-floating power to restrict the ideas to which children may be exposed. Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them...

The State must specifically identify an actual problem in need of solving... and the curtailment of free speech must be actually necessary to the solution...

94)     Here, the state has demonstrated NO "actual problem in need of solving" NOR has the state demonstrated that depriving Plaintiff of speech and association with his fit father is "actually necessary to the solution." Id.

95)     Consequently, Plaintiff seeks a holding that the state's failure to specify with precision the nature of the legal conflict alleged to give rise to judicial authority to regulate intimate and expressive close family speech and association, the state's failure to provide a constitutionally adequate deprivation hearing where the civil litigants were permitted to challenge the state's assertions of authority, the state's presumptive termination of fundamental rights upon the mere filing of a petition, and JPL's failure to hold the state to the constitutionally mandated burden of proof impermissibly violated Plaintiff's First Amendment protected rights with each of his fit parents by imposing overbroad and unjustified regulation of Plaintiff's rights in fundamentally unfair proceedings where the record demonstrates inadequate compliance with substantive mandates and where a different, unjustified, and inadequate set of rules and interpretations were applied to protect Plaintiffs' parents'

rights as civil litigants than are applied to all other civil litigants generally and in this manner the state of Mississippi irreparably injured Plaintiff.

## PARENTAL PRESUMPTIONS PROTECT CHILDREN

96)     The constitution provides that parents must be presumed to be fit and that fit parents must be presumed to be acting in their child's best interests, see <u>Troxel v. Granville</u>, 530 US 57, 68, 69, 70 (2000):

> the record reveals that the Superior Court's order was based on precisely the type of mere disagreement we have just described and nothing more. The Superior Court's order was not founded on any special factors that might justify the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters... The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child... In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters.

97)     This protection is the civil law equivalent of innocent until proven guilty and is a mandatory element of fundamental fairness in judicial proceedings underlying the state's burden of proving its regulation of close families to be constitutional before it may be imposed.

98)     The "protection for Granville's fundamental constitutional right," id., is NOT some new novel invention of the Supreme Court but rather the well-established constitutional protections for fundamental rights that courts are all too familiar with such as standing, subject matter jurisdiction, fundamentally fair process, substantive guarantees, equal protection of the law, and the Supremacy Clause's rule of decision.

99)     Consequently, Plaintiff seeks a holding that the constitutional parental presumptions expressed in *Troxel* apply equally in child custody suits between fit

parents to establish a civil law burden of proof on the state that is the civil law functional equivalent of "innocent until proven guilty" in criminal proceedings that bars the state from regulating fundamental family rights absent prior justification and the provision of a pre-deprivation hearing, and that JPL's failure to hold the state to this burden of proof impermissibly deprived Plaintiff of mandated constitutional protections.

## EXPLORATORY SEARCH, CENSORSHIP

100)  JPL conducted a broad exploratory state investigation into Plaintiff and Father's speech and association as well as Plaintiff's parent's otherwise lawful and constitutionally protected privacy choices regarding child-rearing to establish which of Plaintiff's parents was in the state's opinion the "best" parent and which was the "less-than-best" parent. Upon this state opinion alone, JPL imposed a state censorship scheme on Plaintiff establishing that the "best" parent would have their parental speech and parental authority over Plaintiff enhanced by state action taken under color of the state's family code and the "less-than-best" parent would have their parental speech and parental authority over Plaintiff diminished.

101)  In this manner, the state impermissibly censored the knowledge available to Plaintiff depriving him of his father's knowledge while enhancing his mother's power to convey knowledge, see <u>Griswold v. Connecticut</u>, 381 US 479, 482, 483 (1965):

> In other words, the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought, and freedom to teach—indeed the freedom of the entire university community... the right to educate one's children as one chooses is made applicable to the States by the force of the First and

Fourteenth Amendments... Association in that context is a form of expression of opinion.

102)   It is axiomatic that Plaintiff is entitled to receive knowledge from each of his fit parents without the interference of state censorship, see Stanley v. Georgia, 394 US 557, 564 (1969):

> It is now well established that the Constitution protects the right to receive information and ideas. This freedom of speech and press necessarily protects the right to receive" This right to receive information and ideas, regardless of their social worth is fundamental to our free society. For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.

103)   A unanimous Supreme Court held regarding the right to receive, Kleindienst v. Mandel, 408 US 753 (1972):

> It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail. It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. That right may not constitutionally be abridged either by Congress or by the FCC.

104)   When the message coming from Plaintiff's parents differ, how is Plaintiff to accurately discover the truth when JPL is actively controlling the quantity and authority of the messages for the state's benefit? Children are entitled to the marketplace of ideas arising from both parents' voices without the state tipping the scales in either direction. The mere existence of the censorship scheme is unconstitutional.

105)   The intent of the Fourth Amendment was specifically to bar broad warrants, and it does so by its express terms. Nothing in the Fourth Amendment permits judges to perform broad exploratory searches in sham trials designed to

disguise the nature of the state's civil law authorized broad exploratory search. JPL, authorized by the state's Civil Law PostDivorce Child Custody Regulatory Scheme, conducted a broad exploratory search to identify evidence in support of his own viewpoint which he then applied to justify imposing an impermissible censorship scheme on Plaintiff's speech with his parents thereby depriving Plaintiff of the right to receive the knowledge and values his father has to offer him.

106) It is also the intent of the Fourth Amendment for search and seizure warrants to issue only from a "neutral and impartial" magistrate who takes NO part in conducting the state's investigation and who is independent from the state's pursuit of policy interests necessitating the search. JPL violated the Fourth Amendment by authorizing a broad exploratory search into Plaintiff's private life that JPL then himself conducted in pursuit of the state's best interests of the child policy interests while depriving Plaintiff of access to a competent state court in which to challenge JPL's authority to issue the warrant or to conduct the search.

107) Plaintiff seeks a holding that child custody judges in child custody suits between fit parents are restrained by the express terms of the Fourth Amendment from conducting broad exploratory searches into the parties' private family lives for any purpose and the state's asserted goal of acting in a child's best interest can NOT authorize broad exploratory searches nor may censorship of parent-child speech issue upon evidence discovered in such search.

108) Movant seeks an order from this Court suppressing all evidence JPL acquired through the unlawful broad exploratory search into private family lives that

he authorized and then conducted himself for the purpose of vindicating the state's best interests of the child policy interests.

109)    The court record established by JPL fails to demonstrate that any of the constitutional guarantees mandated for protection against prior restraints on speech and association or to guard against the evils of censorship have been provided and state law requires NO such demonstration to appear in the record or to be provided in any manner for this class of litigant and this class of child.

110)    Plaintiff seeks a holding from this Court that constitutional prohibitions against prior restraints and censorship are fully applicable in child custody suits between fit parents and that without prior justification established in the record, prior restraints and censorship may NOT issue even in child custody disputes between fit parents.

## FIRST AMENDMENT PROTECTIONS

111)    It is axiomatic that the First Amendment protects family associations and other intimate associations as speech precisely because intimate associations cannot exist without the communication and receipt of intimacy through speech, see Board of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 US 537, 545 (1987):

> We have emphasized that the First Amendment protects family relationships...

112)    See also Roberts v. United States Jaycees, 468 US 609, 619 (1984):

> the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty.

113) Parents have a First Amendment protected right associate with their child to educate their own children directly both formally through speech and informally through parental example demonstrated through the intimacies of daily intimacy that is protected as a form of expression, see Griswold, supra at 482, 483:

the right to educate one's children as one chooses is made applicable to the States by the force of the First and Fourteenth Amendments... Association in that context is a form of expression of opinion.

114) See also Bellotti v. Baird, 443 US 622, 637, 638 (1979):

The duty to prepare the child for additional obligations must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship. This affirmative process of teaching, guiding, and **inspiring by precept and example** is essential to the growth of young people into mature, socially responsible citizens.

115) Divorced families are equally entitled to these First Amendment protections, see Moore v. East Cleveland, 431 US 494, 500, 504 (1977):

It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural... Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family.

116) Plaintiff seeks a holding that the intimate and expressive, close family, parent-child speech, association, worship, and family privacy of divorced parents and their children is protected from state action, including that state action taken by child custody judges under color of the state's family code, through constitutional standards protecting private speech, expression, and association.

117) JPL asserts broad practically unlimited discretion justified by a merely substantial state interest to impose prior restraints on divorced parents and their minor children and the state's family code requires Plaintiff's parents to seek

permission from JPL to speak with Plaintiff thereby establishing an unconstitutional censorship or prior restraint on the enjoyment of parent-child freedoms, see <u>FW/PBS, Inc. v. Dallas</u>, 493 US 215, 226 (1990):

> It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official ... is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

118)   Where JPL establishes his viewpoint of which parent is "best" and which is "less-than-best" following an exploratory search into otherwise lawful private family speech and parental decision-making and applies that viewpoint to limit the times, the places, and the manner in which parent and child may speak with one another, may associate with one another, may worship together as a family, and may share family privacy with one another, JPL imposes content-based restrictions on speech that are presumptively invalid and subject to strict scrutiny protections, see <u>Ysursa v. Pocatello Educ. Ass'n</u>, 129 S.Ct. 1093, 1095, 1098, 1105, 555 US 353 (2009):

> Content-based restrictions on speech are presumptively invalid and subject to strict scrutiny... Restrictions on speech based on its content are presumptively invalid and subject to strict scrutiny... It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.

119)   Prior restraints issued by state court judges are equally subject to First Amendment prohibitions, see <u>Vance v. Universal Amusement Co.</u>, 445 US 308, 317 (1980):

> Nor does the fact that the temporary prior restraint is entered by a state trial judge rather than an administrative censor sufficiently distinguish this case from Freedman v. Maryland. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity... That a state trial judge might be thought more likely than an

permission from JPL to speak with Plaintiff thereby establishing an unconstitutional censorship or prior restraint on the enjoyment of parent-child freedoms, see FW/PBS, Inc. v. Dallas, 493 US 215, 226 (1990):

> It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official ... is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

118) Where JPL establishes his viewpoint of which parent is "best" and which is "less-than-best" following an exploratory search into otherwise lawful private family speech and parental decision-making and applies that viewpoint to limit the times, the places, and the manner in which parent and child may speak with one another, may associate with one another, may worship together as a family, and may share family privacy with one another, JPL imposes content-based restrictions on speech that are presumptively invalid and subject to strict scrutiny protections, see Ysursa v. Pocatello Educ. Ass'n, 129 S.Ct. 1093, 1095, 1098, 1105, 555 US 353 (2009):

> Content-based restrictions on speech are presumptively invalid and subject to strict scrutiny... Restrictions on speech based on its content are presumptively invalid and subject to strict scrutiny... It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.

119) Prior restraints issued by state court judges are equally subject to First Amendment prohibitions, see Vance v. Universal Amusement Co., 445 US 308, 317 (1980):

> Nor does the fact that the temporary prior restraint is entered by a state trial judge rather than an administrative censor sufficiently distinguish this case from Freedman v. Maryland. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity... That a state trial judge might be thought more likely than an

administrative censor to determine accurately that a work is obscene does not change the unconstitutional character of the restraint if erroneously entered.

120)   Plaintiff seeks a holding that JPL's child custody orders and parenting plan are presumptively unconstitutional content-based prior restraints and that they must be adequately justified in the court's record before they may be lawful.

## PUNISHING THE CHILD

121)   The problem cited by the state was the exercise of a fundamental right by Plaintiff's parents in an otherwise lawful manner that the state disfavored, the choice to NOT speak or associate further in an intimate and expressive close family marital association. The state may NOT punish the exercise of speech whether that exercise is to speak or NOT to speak and this right encompasses engaging in intimate associations that can only be maintained through the expression of intimacy, see Harman v. Forssenius, 380 US 528, 540 (1965):

> It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution... Constitutional rights would be of little value if they could be . . . indirectly denied... or manipulated out of existence.

122)   Even if the state could punish Plaintiff's parents, the state is prohibited from punishing Plaintiff as a consequence of his fit parents' protected choices, see Weber, supra at 175:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing.

123)   See also Stanley, supra at 651, 652:

Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony. The Court has declared unconstitutional a state statute denying natural, but illegitimate, children a wrongful-death action for the death of their mother, emphasizing that such children cannot be denied the right of other children...

124)   Other children are entitled to fully protected, and individually-protected, fundamental rights with their parents and any classification by the state of Plaintiff being undeserving of these same protections based on his parents' exercise of a fundamental privacy choice regarding marriage is an invidious classification impermissibly designed to punish the exercise of fundamental rights with loss of other rights and to punish children for the perceived sins of their parents.

125)   This loss of rights resulting from a parental act or omission is undeniably a punishment "and can be in no otherwise defined," see Cummings v. Missouri, 71 US 277, 320, 322 (1867):

The deprivation of any rights, civil or political, previously enjoyed, may be punishment, the circumstances attending and the causes of the deprivation determining this fact... Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined.

126)   The past conduct here consists of the choice to divorce, the filing of a child custody petition as mandated by the state as a consequence of exercising the right to divorce, and that otherwise lawful conduct considered by JPL in establishing Plaintiff's father as the "less-than-best" parent and thus deserving of constitutional deprivations beyond those impermissibly imposed upon the "best" parent.

127)   The parental rights of both parents are de facto terminated. JPL merely granted limited parental licenses to these fit parents, granting greater license to the

mother than to the father. These licenses remain subject to modification based solely upon the mere viewpoint of a sole state official which proves the censorship scheme.

128)    Plaintiff seeks a holding that depriving Plaintiff of rights with his fit father simply because his parents divorced one another, and JPL's viewpoint that Plaintiff's fit father is the "less-than-best" parent is an impermissible punishment imposed on Plaintiff that impermissibly deprives Plaintiff of fundamental rights.

### BEST INTERESTS NOT JUDICIAL

129)    While best interest may have qualified as a judicial determination under Nineteenth Century legal standards, it can NOT so qualify under Twenty-First Century legal standards. No matter how much self-interest judges may have in preserving the ultra vires power they exercised in the Nineteenth Century, in the Twenty-First Century, judges MUST abide by Twenty-First Century standards limiting the scope of judicial authority even where that requires that they relinquish ultra vires power that they have exercised for a very long time.

130)    The Tender Years Doctrine fell because it was recognized to be arbitrary discrimination between fit parents. Best interest must fall for the same reason. The best interest determination is an arbitrary policy determination that is NOT to be found within the scope of justiciable authority.

131)    The following is a short-list of the ways in which best interest violates Twenty-First Century legal standards, there are a great many more.

132)    As state action, by a state actor, under color of the state's best interest of the child policy and the state's civil law family code generally, the judge:

a.  is neither neutral nor impartial; the judge is vindicating state policy interests on the state's behalf against the rights of the litigants and against the rights of the child,

b.  is NOT independent from the state's policy concerns; rather the judge is actively engaged in pursuing the state's policy agenda,

c.  enters the proceedings pre-determined to rule in the interests of a non-party non-litigant against the fundamental rights of the litigants,

d.  presumes that the rights of the litigants and the rights of the child dissolved as a result of the parents' divorce from one another,

e.  presumes that the state's best interests of the child policy preempts the Supremacy Clause and the judges oath to uphold its rule of decision,

f.  makes NO effort to identify any concrete injury done to the child because there is none,

g.  makes NO effort to trace any unlawful actions of either parent to any identified concrete injury to the child; rather the judge penalizes otherwise lawful and constitutionally protected parental choices the judge disfavors,

h.  makes NO effort to determine whether or not the relief he provides can actually remediate any concrete injury,

i.  doesn't provide fundamentally fair proceedings and often when challenged responds that he isn't predisposed to choose either parent; rather what he is predisposed to do is to discriminate equally between the parents

under the false presumption that the Equal Protection Clause permits arbitrary discrimination between judicial litigants,

j.     refuses to make a determination that due process applies in the proceedings and thus refuses to make a determination of what process is due to protect the rights that are at risk of erroneous deprivation in the proceedings,

k.     openly rejects the Supremacy Clause duty to provide fundamentally fair proceedings that he swore to provide,

l.     makes NO effort to identify federally protected substantive rights that are at risk of erroneous deprivation and makes NO effort to provide substantive guarantees for those rights to the litigant parents or to the child,

m.     openly rejects the Supremacy Clause duty to protect constitutional rights as its supreme preemptive duty, "anything in the Constitution or laws of any State to the contrary notwithstanding,"

n.     applies a different set of civil procedural rules and a different set of judicial interpretations for this class of civil litigant as opposed to all other classes of civil litigant generally,

o.     classifies the child as a child who is entitled to a percentage of one parent's income but not the other parent's income unequally, thereby classifying the parents and creating unequal classes of children,

p.     classifies one parent as being subject to state and federal penalties for failure to pay a debt without any degree of criminal or quasi-criminal protections being provided based solely upon his sole viewpoint regarding

matters of conscience in child-rearing while entitling the other parent to a host of state and federal benefits where they are unable to provide for the child,

q.     impermissibly presumes that he can compel one parent, but not the other parent, to work for the benefit of the child far beyond meeting the minimum reasonable standards of childcare that all other parents are subjected to without invoking the Thirteenth Amendment's absolute prohibition against compelling one individual to work for the benefit of another,

r.     presumes state authority to impose a state censorship scheme over the speech, association, worship, and family privacy of this class of parent and child,

s.     presumes authority to issue viewpoint-based prior restraints on the times, the places, and the manner in which parents and child may speak with one another, may associate with one another, may worship together with one another as a family, and may share family privacy with one another,

t.     presumes that the child has zero constitutional protections against the judge's unwarranted interference in his private life with his fit parents,

u.     presumes that the parents have lost all federally protected rights to protect the child from the judge's unwarranted interference in the child's private life with his fit parents,

v.     presumes that the parents' privacy rights to make care, custody, control, and companionship choices for their minor child have been terminated by the divorce,

w.    presumes that the child's rights are terminated by the divorce,

x.    refuses to litigate the rights of the litigant parents or the rights of the child as against the state's unconstitutional civil law family code,

y.    presumes jurisdiction to issue dispositional orders binding federally protected rights without establishing that jurisdiction via litigation of those rights,

z.    refuses to acknowledge the legal conflict established with the litigant parents and the child from the state's assertion of authority to regulate First Amendment protected intimate and expressive, close family, parent-child speech, association, worship, and family privacy and to regulate the otherwise lawful and constitutionally protected parental child-rearing privacy choices,

aa.   fails to recognize his federal question jurisdiction where the private conflict between the parents is of federal constitutional dimension and fails to exercise that federal jurisdiction to resolve the federal questions presented while claiming authority to judicially bind those fundamental federally protected rights,

bb.   regulates fundamental rights and then sits in judicial judgement of the constitutionality of his own regulatory actions while actively denying the litigant parents and the child of access to a competent state court in which to vindicate their federally protected rights,

cc.   imposes an undue burden on the rights of parents and child to access federal district courts to vindicate their federally protected interests by hiding

behind the false façade of absolute judicial immunity from suit for damages, as the sole state official holding regulatory authority over the state's family code as applied in this case and thus as the sole official to be named in their official capacity in a §1983 suit, where federal district courts often expand that immunity to protect judges from declaratory and injunctive suits as well, even though the plain text of §1983 contemplates and defines rules for such suits against judges, and

dd.  by knowingly and intentionally regulating the child's First Amendment rights in this manner, the judge knowingly and intentionally irreparably injures the child in direct conflict with controlling federal law and in direct conflict with the state's own goal of acting in the child's best interest exposing the fact that it is the state's best interests and the judge's own personal best interests that the judge is actually seeking to vindicate, NOT the child's,

## RELIEF REQUESTED

133)   The Court's authority to grant relief under §1983 is broad, see <u>Sullivan v. Little Hunting Park, Inc.</u>, 396 US 229, 238, 239 (1969), (The existence of a statutory right implies the existence of all necessary and appropriate remedies...)

134)  Plaintiff has demonstrated his entitlement to equitable relief and providing the equitable relief requested will both prevent future violation of constitutional rights and put an end to ongoing irreparable injury to a child by the state of Mississippi for state pecuniary gain, The state receives NO legitimate gain towards its asserted goal of acting in Plaintiff's best interests from irreparably injuring Plaintiff or from depriving Plaintiff of his fit father and thus the state can suffer NO

injury that may legitimately be weighed against this Court providing the requested relief,

135)    The Supremacy Clause and the judicial oath, swearing to comply with the terms of that clause, impose on every American court a preemptive supreme duty to protect constitutional rights by ensuring that minimum mandatory constitutional guarantees are provided before rights are infringed, Plaintiff seeks nothing more than those constitutional guarantees to which he is lawfully entitled as mandated by the supreme law of the land and made applicable to the state of Mississippi through the Fourteenth Amendment,

136)    If Plaintiff is NOT entitled to the same standing, jurisdictional, and due process guarantees as other children, he is entitled to notice of the state's justification for classifying him as a child who is undeserving of the same constitutional protections to which other children are entitled and is entitled to an opportunity to litigate that classification before a neutral, impartial, and independent judicial decision-maker who has NOT predetermined to vindicate the state's policy interests in conflict with constitutional mandates,

## INJUNCTIVE RELIEF

137)    Plaintiff asks this Court to evaluate JPL's actions in vindicating state policy interests against the rights of the litigants before JPL's court, and against Plaintiff's rights, and to provide a holding as to whether vindicating state policy interests in this manner is regulatory rather than judicial action and thus entitled only to that immunity to which executive branch regulators are entitled,

138)    Plaintiff seeks an injunction against JPL and the state's family code holding that judicial relief may NOT issue in the interests of a non-party non-litigant who has NOT established standing to be entitled to that relief and who has NOT appeared, provided adequate notice, submitted to confrontation, and submitted to cross-examination,

139)    Plaintiff seeks an injunction against JPL and the state's family code holding that Plaintiff is entitled to a substantial measure of First Amendment protected speech, association, worship, and family privacy protections of his intimate and expressive close family associations with each of his fit parents as against the state's, and JPL's, attempt to impose the state's policy interests in direct conflict with those protected interests,

140)    Plaintiff seeks an injunction against JPL and the state's family code holding that Plaintiff's fundamental rights may NOT be infringed by an exercise of "broad discretion" justified by a merely "substantial state interest" through the issuance of judicial prior restraints on the times, the places, and the manner in which Plaintiff is permitted to speak with, associate with, worship with, and share family privacy with each of his fit parents,

141)    Plaintiff seeks an injunction against JPL and the state's family code holding that the definition of the term "prior restraint" as defined by the Supreme Court in *Alexander* apply to child custody courts in child custody proceedings between fit parents and the parenting plans or custody orders those courts issue, see Alexander v. United States, 509 US 544, 550 (1993):

The term "prior restraint" is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur... Temporary restraining orders and permanent injunctions... are classic examples of prior restraints,

142)   Plaintiff seeks an injunction against JPL and the state's family code holding that state regulation of intimate and expressive, close family, parent-child speech, association, worship, and family privacy as well as regulation of the parental privacy choices upon which Plaintiff depends to protect his interests is presumptively unconstitutional until the state appears and overcomes the presumption in a constitutionally adequate deprivation hearing that the state is required to initiate,

143)   Plaintiff seeks an injunction against JPL and the state's family code holding that a final trial to determine his parents' rights of custody to him is unconstitutional because his parents each entered the custody proceedings with fully vested federally protected individual child custody rights which the state is NOT permitted to infringe as a consequence of their divorce from one another or of their filing a child custody petition or under any other justification currently asserted by the state's family code and because a state determination of Plaintiff's best interests, even when made by a state court judge, is a state viewpoint that is constitutionally insufficient to alter these fundamental rights,

144)   Plaintiff is entitled to this relief because his right to be in each parent's custody and to have each parent's exercise of right protect Plaintiff from unwarranted state actions taken in conflict with his interests is concomitant to his parents' rights and Plaintiff's concomitant rights are fully protected by the federal constitution against JPL's and the state's policy and regulatory interests in his custody, The state has failed to adequately demonstrate its authority to regulate Plaintiff's fundamental

rights and Plaintiff asserts his constitutional rights as a defense against all state action concerning his right to be fully and equally in each fit parents' custody,

## DECLARATORY RELIEF

145)   Plaintiff seeks declaratory relief against JPL and the state's family code holding that federal constitutional mandates apply fully against state regulation imposed through child custody proceedings where the state inserts its regulatory interests into the private civil suit between fit parents regarding a conflict of federally protected parental rights and that "broad" discretion justified by a merely "substantial" state interest[5] can NOT justify deprivations of fundamental rights under any enhanced standard of constitutional review,

146)   Plaintiff seeks declaratory relief against JPL and the state's family code holding that Plaintiff is NOT entitled to judicial relief in his interests in a child custody suit between his fit parents incident to their divorce from one another because Plaintiff has NO right to have married parents and NO legal harm can befall Plaintiff from his parents exercise of an otherwise lawful constitutionally protected choice regarding their marital speech and association because none of Plaintiffs constitutional rights to either of his parents can lawfully be made dependent upon a marriage between his parents nor infringed as a consequence of their divorce from one another, Consequently, JPL lacks the concrete injury,[6] traceability, and redressability necessary to establish judicial authority to issue relief in Plaintiff's interests and all

---

[5] Palmore, supra and Grutter, supra.

[6] US v. Sineneng-Smith, 140 S. Ct. 1575, 1587 (2020), (At common law, this sort of factual harm without a legal injury was damnum absque injuria and provided no basis for relief. Courts adhered to the obvious and ancient maxim that one's real-world damages alone cannot lay the foundation of an action if the act complained of does not violate any of his legal rights.)

orders styled as in Plaintiff's best interests or resulting from an adjudication of JPL's viewpoint of Plaintiff's best interests are merely advisory in nature and are incapable of binding Plaintiff's rights, his father's rights, or his mother's rights,

147)    Plaintiff seeks declaratory relief against JPL and the state's family code holding that Plaintiff categorically denies that he has suffered any concrete injury caused by his parents marital or parental choices that could authorize relief in these proceedings,

148)    Plaintiff seeks declaratory relief against JPL and the state's family code holding that Plaintiff alleges that he has suffered concrete irreparable injury that is legally traceable to JPL's and the state's unlawful regulation of his best interests and has demonstrated standing to be entitled to judicial relief against JPL and the state's family code,

149)    Plaintiff seeks declaratory relief against JPL and the state's family code holding that state regulation of intimate and expressive, close family, parent-child speech, association, worship, and family privacy as well as regulation of the parental privacy choices, upon which Plaintiff depends to protect his interests, is presumptively unconstitutional until the state appears and demonstrates with evidence presented through testimony, following constitutionally adequate notice, subject to confrontation and cross-examination that its intended regulation can survive the mandated standard of constitutional review and that the trial court judge may NOT assert the state's interests on the state's behalf,

150)    Plaintiff seeks declaratory relief against JPL and the state's family code holding that depriving Plaintiff of First Amendment rights without first affording

Plaintiff all mandated constitutional guarantees for the protection of the First Amendment rights at issue constitutes irreparable injury to Plaintiff that is NOT rationally related to the state's asserted interest of acting in Plaintiff's best interests,

151) Plaintiff seeks declaratory relief against JPL and the state's family code holding that the state may NOT regulate First Amendment interests and other fundamental rights by exercise of "broad discretion,"

152) Plaintiff seeks declaratory relief against JPL and the state's family code holding that the state's interests in acting in Plaintiff's best interests is merely a "substantial" state interest[7] that can NOT justify state regulation of rights protected by the compelling state interest test,

153) Plaintiff seeks declaratory relief against JPL and the state's family code holding that depriving Plaintiff of his fit father is NOT rationally related to the state's asserted interest of acting in Plaintiff's best interests,

154) Plaintiff seeks declaratory relief against JPL and the state's family code holding that JPL's opinion of Plaintiff's best interest is a viewpoint that when applied to justify prior restraints establishes content-based and viewpoint-based prior restraints that are presumptively unconstitutional,

155) Plaintiff seeks declaratory relief against JPL and the state's family code holding that depriving his father of property and granting that property to his mother

---

[7] Grutter v. Bollinger, 539 US 306, 352 (2003), (concurrence Justice Thomas & Scalia), (An even greater governmental interest involves the sensitive role of courts in child custody determinations. In Palmore v. Sidoti... the Court held that even the best interests of a child did not constitute a compelling state interest); Palmore, supra at 433, (The goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest for purposes of the Equal Protection Clause.)

influences Plaintiff's evolving ability to make competent choices as a teenager by impermissibly enhancing his mother's parental speech and parental authority while impermissibly diminishing his father's parental speech and parental authority resulting in impermissible state censorship of Plaintiff's access to information and knowledge that will forever alter Plaintiff's adult life,

156) Plaintiff seeks declaratory relief against JPL and the state's family code holding that the Mississippi Family Code is unconstitutional where it delegates to JPL, and NO other official, sole regulatory authority to vindicate the state's family law policy interests against Plaintiff, Plaintiff's Father, and Plaintiff's Mother while JPL remains the sole judicial officer with jurisdiction to hear constitutional challenges to the state's regulatory actions taken by JPL himself against Plaintiff, Father, and Mother and that this scheme impermissibly deprives the regulated parties of access to a competent state court for the vindication of their federal rights against the state's policies and regulatory actions,

157) Plaintiff seeks declaratory relief against JPL and the state's family code holding that establishing judicial authority to bind federally protected fundamental rights under color of civil law in a child custody suit between fit parents requires that 1) standing be properly established, 2) that the state provide a constitutionally adequate deprivation hearing, 3) that the court's authority to issue dispositional relief must first be adjudicated as a matter of right as against the state's asserted civil law authority, 4) that the relief provided by the court actually resolves the controversy establishing the court's authority, and 5) that the relief provided is properly scoped to the ends-means test applicable to each element of relief,

158) Plaintiff seeks declaratory relief against JPL holding that JPL's authority to issue judicial preliminary and permanent equitable relief in a child custody suit between fit parents is limited by the terms enumerated in *ebay*,

159) Plaintiff seeks declaratory relief against JPL and the state's family code holding that litigant parents and children, subjects of a child custody suit between fit parents, are entitled to the full measure of constitutional guarantees mandated by 1) rules of standing, 2) rules of subject matter jurisdiction, 3) rules limiting judicial dispositional authority, 4) procedural due process rules, 5) substantive due process rules, 6) equal protection rules, 7) constitutional limits on equitable authority, and 8) the Supremacy Clause's rule of decision that include First, Fourth, and Fourteenth Amendment protections against state action of every kind whether executive, legislative, or judicial,

## PRELIMINARY RELIEF

160) Plaintiff seeks immediate preliminary relief enjoining the state and JPL to immediately and without delay cease all irreparable injury to Plaintiff,

161) Plaintiff seeks immediate preliminary relief enjoining the state and JPL to cease all irreparable injury to Plaintiff that is fairly traceable to pecuniary gain to the state from federal payments through Title IV-D of the Social Security Act, Plaintiff seeks immediate injunction against all state ordered irreparable injury to children for the state's pecuniary gain,

162) Plaintiff seeks immediate preliminary injunctive relief restoring his fit father to him and ceasing all state persecution of his fit father that is authorized or justified either directly or indirectly as being in Plaintiff's best interests,

163)    Plaintiff seeks declaratory relief as herein expressed directing JPL that his actions are unlawful and that he is required to comply with the Supremacy Clauses rule of decision and properly fulfil his judicial duty immediately and without delay or injunction will promptly issue.

## CONCLUSION

164)    When litigants stand up in court, raise their right hand, and swear an oath to tell the truth, the whole truth, and nothing but the truth they are subject to punishment by a judge for failing to uphold that oath.

165)    When that same judge stands up, raises his right hand, and swears an oath to abide by the Supremacy Clause's rule of decision what penalty is that judge held to when he elevates the state's best interests of the child policy interests over controlling federal law and policy? What gives that oath meaning or does that oath even have meaning?

166)    What Plaintiff is asking herein can be boiled down to one single request, the Honorable State Court Judge Percy L. Lynchard swore an oath to be bound by the Supremacy Clause, Plaintiff asks this Court to take a large step to restore America's faith in its judiciary by holding Judge Lynchard accountable to his sworn oath to abide by the Supremacy Clause's rule of decision and to subordinate the state's best interests of the child policy interests to controlling federal law and policy, or in the alternative, to declare Judge Lynchard's best interests of the child determination to be nonjusticiable and regulatory in nature because it is made in the absence of subject matter jurisdiction.

# PRAYER

167)   Plaintiff prays for an immediate preliminary declaration holding that depriving Plaintiff of First Amendment protected interests with either of his fit parents without providing mandated constitutional guarantees protecting Plaintiff against the evils of prior restraints and state censorship irreparably injures Plaintiff and is NOT rationally related to acting in Plaintiff's best interests,

168)   Plaintiff prays for an immediate preliminary declaration holding that the constitution forbids the binding of federally protected constitutional rights of litigants or non-party non-litigants in judicial proceedings by litigation of the interests of a non-party non-litigant who has not established standing to have his interests litigated or by providing relief in the interests of a non-party non-litigant who has not established standing to be entitled to judicial relief,

169)   Plaintiff prays that this Petition in all things be granted,

170)   Plaintiff prays for any other such further relief as the court deems just and proper,[8]

---

[8] NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC. v. City of New York, _____, (2020), (And while the amended complaint does not expressly seek damages, it is enough that it requests "any other such further relief as the court deems just and proper." ... a party should experience little difficulty in securing a remedy other than that demanded in the pleadings as long as the party shows a right to it...)

Respectfully Submitted by:

By: /s/ Beau McPhail
    Beau McPhail, Pro Se
    143 CR 380
    Calhoun City, MS 38916

    662.637.7207
    mcphailbeau@gmail.com

## **CERTIFICATE OF SERVICE**

I certify that on <u>January 9th, 2024</u>, according to the rules, all parties that qualify on this petition have been served via the CM/ECF system, All parties who do not were mailed a CERTIFIED copy of the petition, the Honorable State Court Judge Percy L. Lynchard will be personally served with a file stamped copy of this petition.

It is understood that the federal rules of civil procedure require the Honorable State Court Judge Percy L. Lynchard to waive service in this matter but in an effort to avoid unnecessary delay, personal service will be attempted.

By: <u>/s/ Beau McPhail</u>
Beau McPhail, Pro Se
143 CR 380
Calhoun City, MS 38916

662.637.7207
mcphailbeau@gmail.com