# UNITED STATES DISTRICT COURT

RECEIVED

AUG 1 2 2024

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

for the

N.D. Mississippi, Greenville Division

|  |  |  |
|---|---|---|
| Beau McPhail | ) | |
| *Plaintiff* | ) | |
| | ) | Civil Action No: |
| v. | ) | |
| | ) | 4:24-cv-002-DMB-JMV |
| Honorable State Court | ) | |
| Judge | | |
| Percy L. Lynchard | ) | |
| *Defendant* | ) | |
| | ) | |

## PLAINTIFF'S CHALLENGES TO ORDERS [17, 18]

Comes now Beau McPhail to object to this court's orders and to constitutionally challenge the statutory-based, judicial rules-based, or equity-based authority of this court to issue these orders. Beau challenges this court's ORDER issued on July 30, 2024, and ORDER DENYING PLAINTIFF'S MOTION FOR SPECIAL PROVISIONAL APPEARANCE OF RONALD PALMER AS NEXT FRIEND OR NON-ATTORNEY COUNSEL FOR BEAU MCPHAIL issued on July 29, 2024.

Beau McPhail asserts irreparable injury from a state court judge who claimed to be acting in his best interests while adjudicating his best interests in the absence of standing and therefore in the absence of subject matter jurisdiction.

Beau is petitioning this court as an exercise of fundamental right seeking protection of his constitutional rights which is this court's highest order Supremacy Clause imposed duty to provide. Beau is NOT asking this court to give its permission for him to associate with others to enhance his ability to speak in defense of is own rights against corrupt state court judges and against a federal court that appears intent on

depriving him of his most basic fundamental rights, because he has a fundamental right to speak on his own behalf and petition this court on his own behalf.

Federal Rule of Federal Procedure 17(b) is unconstitutional as applied by this court to Beau in this case because it grants the state legislature of Mississippi illegitimate authority to define Beau's fundamental right of access to a federal court and his First Amendment protected right to petition this court in a manner that impermissibly classifies him as being without the same fundamental right to access to federal courts and the same fundamental right to petition federal courts as 18-year-olds in other states.

This court's actions in depriving Beau of fundamental rights violate Beau's due process and equal protection rights where the standard of review is strict scrutiny. This Court has referenced a rule but has provided NO compelling justification for applying this broadly unconstitutional rule, nor is denial of fundamental rights the least restrictive option available to this court.

This court merely presumes that non-attorneys are incompetent to protect someone else's rights while those same non-attorneys are claimed to be perfectly competent to protect their own rights. Mr. Palmer has been declared by a federal district court to be competent to protect his own rights in his own suit, but this court declares Mr. Palmer incompetent by presumption to assist Beau in protecting his own rights.

The right asserted is the right to the "assistance" of counsel. There is NO question but that Beau or most any pro se litigant would be better able to defend themselves against government corruption with Mr. Palmer's assistance. This court's presumption to the contrary, no matter how formulated, is NOT a compelling governmental interest nor is the government's regulation of the practice of law a compelling government interest while the rights asserted by Beau in this case are fundamental rights demanding compelling justification for their infringement.

Neither Lynchard nor this court have established any compelling governmental interest in preventing Beau from petitioning this court, from accessing this court to vindicate his federal rights against Lynchard, in preventing Beau from having the speech and association assistance of Mr. Palmer in their joint political goal of having the Mississippi family law code declared unconstitutional.

If Beau is declared a minor, then this court has a highest order duty to protect Beau's best interests. Where this court deprives Beau of fundamental rights without meeting strict scrutiny due process and strict scrutiny equal protection standards, this court irreparably injures Beau which is contrary to Beau's best interests.

Having the Fifth Circuit hold that this federal court may NOT violate Beau's fundamental rights and call it acting in his best interests will in the end, invalidate the Mississippi family law code because it deprives Beau of fundamental rights, irreparably injures him, and calls it acting in his best interests.

Where there may be multiple levels of best interest tests, the one most fundamental and absolutely necessary test of best interest in judicial proceedings is whether the individual's constitutional rights are being protected. If this court deprives Beau of access to a federal court to vindicate his federal rights, then this court is violating his best interests while it violates its own oath, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

This court's assertion appears to be that 18-year-olds in Mississippi are incapable of competently asserting their federal rights in a federal court but 18-year-olds in Texas are fully competent to assert their federal rights in a federal court. This clearly raises equal protection questions regarding the similarly situated federal litigants where this court is granting the state of Mississippi authority to make federal law which is beyond this court's jurisdiction and is even beyond Congress' jurisdiction.

In America there exists two separate and unequal classes of 18-year-olds. One class is fully protected by the First Amendment and the second class is unprotected by the First Amendment in terms of their right to petition the government for redress of government-imposed injuries to them. These unequal classes of 18-year-olds is impermissibly established by a federal rule granting Mississippi federal law-making powers.

This Court asserts that Beau must have a government approved speaker who is approved via an unconstitutional scheme that regulates who can be a government approved speaker by restricting that membership through content-based limitations on speech where the most vital speech a person can have.

Regulation of the practice of law singles out speech by its content where that content is speech protecting an individual's constitutional rights against a corrupt state judiciary that openly abuses children under this federal court's willing gaze. This regulation directly limits the core right to petition the government for redress of grievances. This regulation directly limits the core right to assemble for purposes of petitioning the government for redress of grievances. This regulation directly limits the right of individuals to associate for the purpose of petitioning the government for redress of grievances and speaking out in a government forum against state law violation of the federal rights of children for pecuniary gain to the state under Title IV-D.

The Social Security Administration (SSA) pays the state of Mississippi through Title IV-D to ensure that Lynchard and all other Mississippi judges always enter child custody proceedings predetermined to provide judicial relief that is in the best interests of the Social Security Administration.

SSA achieves this goal under Congressional command to work with states to pass state legislation approved of by the federal government, to certify the state statutes to be in compliance with Title IV-D where the state properly submits to federal control, and to assist the state in administering the seizure of money from the irreparable injury of children under these unconstitutional statutes that SSA certified compliant with Title IV-D.

Child support statutes in Mississippi are blatantly unconstitutional under rational basis analysis but SSA pays the state of Mississippi to ensure that those statutes never face competent constitutional adjudication in Mississippi courts. Beaus' father sought to challenge the constitutionality of these statutes, properly established standing to have the federal questions resolved under the state court's federal question jurisdiction, and Lynchard absolutely refused, without a constitutionally acceptable excuse, to adjudicate the federal questions properly presented, see Howlett v. Rose, 496 US 356 (1990).

Systemic Mississippi court corruption is the claim in Beau's suit. The Mississippi courts absolutely control regulation of the practice of law in Mississippi. It is absolutely impossible for Beau to be confident that any government speaker approved by

Mississippi, or for that matter any state whose child support statutes are certified under Title IV-D, because that government approved speaker would be directly challenging the very people who control his ability to practice his profession and asserting that they are both corrupt and openly engaged in a criminal scheme that irreparably injures children for money.

The appearance of bias in requiring a government speaker to protect Beau against that speaker's own regulators is far more than due process will permit.

Likewise, the denial of the preeminent family law constitutional authority in this country, who has specialized in exposing exactly this form of corruption for almost two decades, from being able to assist Beau creates a clear appearance of bias. This is particularly true where Mr. Palmer has proven his constitutional competence in demonstrating to a federal court magistrate that he would be likely to prevail on his challenges to the Texas Unauthorized Practice of Law statue because it is an impermissible content-based prior restraint and because its regulation clearly violates the separation of powers doctrine.

Regulation of the practice of law requires that government approved speakers give up their First Amendment rights in significant measure to be permitted to have the job of government approved speaker. Attorneys, for instance, can NOT call bad judges bad judges. Lynchard is a bad judge by any measure. That is the core issue in this case and government approved speaker demanded by this court is subject to content-based prior restraints limiting their ability to protect Beau's rights.

If Beau is unable to acquire a government approved speaker to assist him in defending his rights against the government, this court holds that it will terminate his right to petition this court and to access this court to vindicate his federal rights as an individual until he is 21 at which point much if not all of the case will be declared moot and this court will have caused irreparable injury to this child and many thousands more to needlessly continue.

The government approved speaker's voices are impermissibly quelled on this issue by judges.

State court judges assert broad unbridled discretion to alter intimate and expressive, close family, parent-child speech, association, worship, privacy, and parental decision-making privacy rights with little or no constitutional limitation on that authority. This unbridled discretion permits these judges NOT only to impermissibly censor parents and children but to impermissibly censor attorneys. It is nearly impossible to hold judges accountable for their malicious and intentional violation of civil rights or their malicious and intentional punishment of attorneys through their best interests of the child powers.

In addition, the state and the federal government have created a nation-wide system where attorneys make tremendous amounts of money assisting the state's in irreparably injuring children for money where even attorneys of the lowest skill levels can earn a good living because little real law is performed in child custody cases.

Attorneys are government approved mouthpieces who have a massive pecuniary interest in preserving the current corrupt system and take massive risks of punishment where they anger a judge by challenging their broad unbridled discretion to regulate speech through prior restraint. They are educated to the government's standards and are completely controlled by the government. They are required to give up their First Amendment rights to call bad judges bad judges simply to work as attorneys before judges who by demanding they waive their First Amendment rights just to practice law are by definition bad judges.

It is impossible to find a competent attorney who is actually willing to challenge a nation-wide child custody industry where judges control tens of billions of dollars spent to irreparably injure children so that a great many people can feed off of the misery and suffering of these children. There is NO possible way that Beau could ever have real confidence that any attorney he hired would share his interest in exposing the unconstitutional corruption of this nationwide industry.

Regulation of the practice of law is a merely substantial governmental interest.

The purpose of government regulation of the practice of law is nothing short of content based prior restraint on the ability of individuals to associate for the purpose of petitioning their government for redress of grievances against the injuries the

BM PLAINTIFF'S CHALLENGE TO ORDERS                                                           6

government itself is causing them. Nothing Lynchard has provided this court even comes close to establishing a compelling justification for denying Beau his fundamental constitutional rights in this case.

Regulation of the practice of law is much like regulation of child custody. Both forms of regulation assert that they exist to protect the public but when push comes to shove, the regulations irreparably injure the public while providing pecuniary benefits to the government. Certainly, the courts are much more efficient where the courts tightly regulate who may appear before them. That is a pecuniary gain.

While the government's regulation of the practice of law has more holes than a sieve, going down that rabbit hole just delays providing relief to this young man who is being injured every day by a corrupt state judge who is actively violating federal law and is seeking this federal court's protection for that violation. In a situation where delay benefits the corrupt judge and harms Beau, we prefer to avoid this particular rabbit hole on this day.

While Mr. Palmer has a powerful self-interest in defeating this unconstitutional regulation of speech under the guise of practicing law, he put that self-interest aside in his own case where he was pursuing other more immediate interests, and in this case, he is putting that self-interest aside because it delays gaining relief for Beau unless it becomes a necessary option to protect Beau's rights.

<u>Rights Asserted</u>

Judges should look at how they are supposed to be putting their own self-interests aside to fulfil the oaths they all swore, to place the United States Constitution and the basic freedoms it embodies above all other concerns. When this court broadly applies a general rule to deprive Beau of his fundamental right of access to the federal courts rather than providing individualized fact and case specific constitutional analysis that weighs the real interests of the government in establishing its rules against Beau's constitutional rights to receive federal court protection of his basic rights, this court strays from its oath.

Beau demands a determination of what process is due to protect his fundamental right to petition this court, his fundamental right of access to the federal courts to

vindicate his federal rights against a corrupt state court judge and a state law that seeks to unequally deprive him of his federal rights, and his right to associate with a counsel of his choosing when challenging government violations of fundamental rights by those who regulate the practice of law.

Beau specifically demands constitutionally adequate notice of the burden of proof that applies when a state actor asks this court to deprive Beau of his most basic fundamental rights.

Beau demands a determination of the constitutional standard of review that must be applied by this court before it can deprive him of access to the federal courts to vindicate federal rights that the Supreme Court holds protects children, see Brown v. Entertainment Merchants Ass'n, 131 S. Ct. 2729, 2735, 2736 (2011):

> Minors are entitled to a significant measure of First Amendment protection... No doubt a State possesses legitimate power to protect children from harm... but that does not include a free-floating power to restrict the ideas to which children may be exposed. Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them... The State must specifically identify an actual problem in need of solving... and the curtailment of free speech must be actually necessary to the solution...

Beau asserts that Defendant is asking this court to protect Beau from speech and association with Mr. Palmer that protects Beau from Defendant's violation of his rights far better than any other speech or association that is otherwise available to Beau. Granting Defendant's request requires compelling justification that is unrelated to the suppression of ideas and Defendant must demonstrate that the interests asserted by the government could not be achieved through means less restrictive of Beau's and Mr. Palmer's association for the purpose of petitioning the government for redress of grievances, see Roberts v. United States Jaycees, 468 US 609, 617, 618-623 (1984):

An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.... Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.

The government's interest in regulating the practice of law is a merely substantial governmental interest that can NOT survive the compelling state interest test even in a general sense and certainly could NOT meet the standard as asserted to absolutely deprive Beau of his fundamental right to access the courts.

Defendant has asserted NO compelling justification for preventing Beau and Mr. Palmer from jointly petitioning this court for redress of grievances.

Both Beau and Beau's father are clients of Mr. Palmer who have engaged him for the purpose of assisting them in protecting their constitutional rights against a corrupt state judiciary where the state judiciary regulates the practice of law and directly controls every state attorney who might otherwise be employed to this task. Mr. Palmer considers his work with clients to be protected as a matter of political associational privacy and Mr. Palmer's clients expect him to act in respect of this belief.

There are many cases where businesses have been permitted to represent the rights of their clients and Beau is raising an overbreadth challenge to the Mississippi family law code, see Broadrick v. Oklahoma, 413 US 601 (1973):

As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." ... Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

If necessary, Mr. Palmer will seek to join this suit under the overbreadth challenge to the Mississippi family law code.

Further, Mr. Palmer is attempting to engage in a course of conduct protected by the First Amendment and Defendant is attempting to prevent Mr. Palmer's exercise of fundamental rights by reference to rules and statutes. This court cites federal rules asserted to proscribe Mr. Palmer' intended conduct thus documenting Mr. Palmer's "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute."

Consequently, Mr. Palmer himself has Article III standing against Lynchard, against the Mississippi family law code, and against any rules or statutes asserted to bar Mr. Palmer from the protected course of conduct, see NAT. FEDERATION OF THE BLIND OF TEXAS, INC. v. Abbott, 647 F. 3d 202, 208, 209 (5th Circuit 2011):

To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling... To prove an injury in fact sufficient to raise a First Amendment facial challenge, however, a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.

Attorneys threaten people with the unauthorized practice of law routinely in an unlawful attempt to quell their First Amendment protected speech in protection of the financial interests of attorneys generally.

The Unauthorized Practice of Law Committee threatened Mr. Palmer some years ago where upon Mr. Palmer promptly sued them in federal court seeking a declaration that the Texas Unauthorized Practice of Law statute was an impermissible prior restraint and that the regulatory structure for the practice of law violated the Separation of Powers Doctrine. While the case was ultimately dismissed "without" prejudice as being premature, the magistrate was clear to the Defendants that Mr. Palmer would likely prevail on the merits of his claim. At any moment, the political winds could change, and Mr. Palmer could be again attacked by the Committee.

This court's attempt to prevent Mr. Palmer's speech and the Committee's previous and "capable of being repeated" attack on Mr. Palmer's speech creates an irreparable injury to Mr. Palmer to which he is entitled to seek judicial relief, Elrod v. Burns, 427 US 347, 373, 374 (1976):

> It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury... Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief.

Beau asserts that this Court is seeking to protect him from harm it presumes from the speech and association of a person who is NOT sanctioned by the government to speak in association with him in protecting his rights. This court appears to believe that the constitutional arguments and citations provided by Mr. Palmer must be suppressed in this court because those arguments and citations are believed to be unsuitable for Beau. However, the burden of proof is on Defendant to demonstrate compelling justification for the prohibition on First Amendment activities which requires actual

injury that is necessary to remediate, NOT the mere presumption of injury and necessity.

What actual problem is Defendant asserting that necessitates depriving Beau of speech and association with Mr. Palmer that undeniably makes his constitutional arguments stronger and more likely to succeed against the government's attempts to continue irreparably injuring him under blatantly facially unconstitutional state statutes where state court judges financially benefit from imposing those unconstitutional statutes on litigants before their courts, where attorneys financially benefit from failing to successfully challenge those statutes, and where the state of Mississippi is directly paid by Martin O'Malley to irreparably injure children for the Social Security Administration's financial benefit?

Depriving Beau of a next friend is NOT just some administerial task to be accomplished by blind obedience to a rule where that rule is inapplicable under the facts and circumstances of this case. Depriving Beau of a next friend is depriving Beau of an effective defense against government violations of his rights that are being systemically imposed under a coordinated federal state program where everyone involved benefits from Beau's suffering except Beau. Depriving Beau of a next friend of his choosing is a direct violation of Beau's First Amendment rights that he retains even as a minor.

This Court can NOT legitimately deprive Beau of his fundamental right to speak in association with a next friend against government injustices in a First Amendment protected petition for redress of grievances against the government. This court has an unflinching duty to protect Beau's constitutional rights from infringement by state laws. That unflinching duty is spelled out specifically in the Supremacy Clause of Article VI of the United States Constitution which also requires the judge of this court to swear an oath to perform.

Beau petitions this court to exercise that unflinching duty unless this court can establish a constitutionally permissible excuse to the exercise of that jurisdiction. State law age discrimination barring access to federal courts is NOT a constitutionally permissible excuse because it directly violates equal protection mandates.

Where this court asserts an interest in protecting Beau from the possibility that his chosen next friend will provide inadequate assistance to him, or somehow might NOT act in his best interests, this court defeats that protection when its solution is simply to deprive Beau of his fundamental right of access to the federal courts to vindicate his federal rights against Lynchard.

Lynchard has NOT met the necessary standard to preclude Mr. Palmer from acting as Beau's Next Friend or even as his non-attorney counsel nor has this court recognized any compelling justification for the government's restrictions on the practice of law in the context of political expression through association. Thus, this court lacks legitimate authority to restrain Mr. Palmer's political and legal speech in association with Beau as applied in this case.

### National Public Interest

When a state court judge is a Defendant in a federal court, there is always an appearance of favoritism towards the state court judge. Federal law and federal court precedent openly and flagrantly bake that favoritism directly into their mandates openly ignoring the fact that 42 U. S. C. 1983 became law precisely because corrupt state judges were committing atrocities against a disfavored class of individuals. Absolute judicial immunity from suit is a classic example of favoritism justified by shared interests that it directly defeats.

The very reason that Defendant can so confidently violate Beau's rights in this manner is that his civil law mandated political policy administration, regulation, and enforcement actions are protected by judicial immunity in the federal courts even as the state court judge simultaneously exercises judicial jurisdiction to declare his own political policy vindication actions to have been constitutionally applied.

The federal courts declare that immunity is necessary to protect the independence of judges so that independent judges can protect the rights of the people, but the reality is that judges use that protected independence to conspire with other state and federal officials to commit civil rights crimes for pecuniary benefit against the people they are supposed to be protecting. Judicial immunity can NOT even survive rational basis review because it demonstrably defeats its own primary asserted interest.

Once again, this is a rabbit hole that when pursued simply delays justice to Defendant's illegal benefit. Mr. Palmer has his own 42 U. S. C. 1983 suit challenging government immunity under this and other arguments where 42 U. S. C. 1983 and 28 U. S. C. 455 must be read together to deprive federal courts of jurisdiction to grant immunity as judicial relief because both the federal court judge and the state court judge defendant share a pecuniary interest in preventing any successful challenge to the judicially established immunity policy.

There is NO legitimate path around this clear jurisdictional bar to judicial immunity as a judicially imposed policy interest and it is only a matter of time before the federal judge in that case is compelled to choose a side of history for his legacy.

If it appears that Defendant may successfully argue judicial immunity in this case, Beau will simply join Martin O'Malley to the suit for his unconstitutional payments to the state of Mississippi to receive predetermined judicial outcomes that directly financially benefit the Social Security Administration in every child custody case even as every child who is a subject of a child custody case is irreparably injured for the government's pecuniary gain.

Martin O'Malley can certainly claim NO judicial immunity from declaratory and injunctive relief in his official capacity as Commissioner of the Social Security Administration. Martin O'Malley is tasked by Title IV-D federal law to conspire with the state to pass child support statutes that benefit the federal government. He is tasked with certifying those child support statutes as properly benefiting the federal government and he is tasked with assisting the state in administering its child support scheme. The concrete injury that Beau is suffering every day is directly traceable to Martin O'Malley's unconstitutional administration of Title IV-D law.

The proof of Title IV-D's constitutional violation is directly bound up with the inherent unconstitutionality of the Mississippi family law code and Martin O'Malley's involvement with that code. One way or another, the Mississippi family law code will face federal litigation and the Mississippi Attorney General who directly benefits from Title IV-D will have to explain how the irreparable injury of every child in every child custody suit is in those children's best interests.

BM PLAINTIFF'S CHALLENGE TO ORDERS                                        14

We can confidently claim that every child is injured because the instant that a child custody suit between fit parents is filed, the constitutional rights of those parents and of the child are presumptively de facto terminated and replaced with a limited state issued parental license to engage in parent-child speech, association, worship, and family privacy that also limits the authority of parents to make constitutionally protected parental privacy choices for their minor children. The day before the petition is filed, both parents hold constitutionally protected rights against state court actions taken under state law. The instant the petition is filed, those protections against state action cease to exist and are replaced by the mere viewpoint of a sole state official regarding matters of conscience in child-rearing where that viewpoint can NOT be judicially challenged. This is the classic definition of presumptively unconstitutional government censorship.

This scenario is exactly the same in all fifty state court systems and in the federal territorial court system. It survives because federal courts permit it to survive by denying those whose rights are violated by the state judges from receiving federal protections for their federal rights. This unconstitutional protection of invidious discrimination in Mississippi ends with this case or the Fifth Circuits' district courts will be forever tainted with the stench of this criminal scheme.

Judges refuse to end the corruption. Attorneys refuse to end the corruption. Attorneys general refuse to end the corruption and Martin O'Malley pays the state of Mississippi to ensure these predetermined results. This corruption is collapsing under its own corrupt weight, and it is time for political actors to start distancing themselves from the fallout of that collapse.

The increasingly ill-educated and incompetent government approved voices that have applied to and been granted membership in the judicially controlled labor union called the Bar are a core part of the problem. Year after year, their education includes less and less of the constitutional reasons why and more and more of blindly accepting the self-interested pronouncements of judges. By controlling what is on the Bar Exam, judges control what is taught in law schools. These attorneys then make large sums of money for simply going along with judicial corruption and judicial irreparable injury to

children because they don't have the basic competency necessary to challenge it and it is against their pecuniary interests to do so.

Under controlling Mississippi law, Lynchard lacks judicial subject matter jurisdiction to adjudicate Beau's best interests where there exists NO concrete injury to Beau asserted to have been caused by either fit parent and yet NOT one family law attorney in Mississippi is competent to recognize that the court lacks fundamental judicial authority, and they are even less competent to properly challenge that lack of authority. Or, in the alternative, they are happy to go along with the corruption, violating their fiduciary duties to their clients where they know the court's orders to be advisory at best.

Lynchard is manufacturing judicial jurisdiction where none exists, and this court is manufacturing the absence of jurisdiction where jurisdiction clearly exists. These are two sides of the same coin and Beau's rights are violated on both sides of the coin in both courts based upon nothing but greed, bias, and prejudice against the children of divorced parents.

This system is profoundly fundamentally broken. Mr. Palmer has the professional credentials to definitively document the current state of the broken system, to definitively document the ideal state of the system as defined by the United States Constitution, to provide a professional Gap Analysis demonstrating precisely where the current system and the ideal system diverge, and Mr. Palmer has the professional credentials to establish and implement a nation-wide policy and process engineering project to fix the problems. Mr. Palmer can accomplish this larger task while assisting individual parents and children to protect their rights in their individual cases.

Mr. Palmer has done this kind of work on a global scale for the very largest companies in the world while working for the most prestigious consulting companies in the world. Since his own divorce and child custody battles originating in the 2007 timeframe, Mr. Palmer has been passionately applying his professional expertise towards exposing the failings of this most profoundly corrupt government system. As a country, we are at the point in the organizational change project where the current process must be so profoundly altered that those working within the system have NO

choice but to move forward with a new and better system even if they have to build it as they go.

The core necessary activity in any substantial organizational change initiative, break the current system and prevent any possibility of returning to the old system. Then focus everyone's attention on creating new and better systems based upon the gap analysis and the profound knowledge[1] developed in its creation.

The civil rights suit against Martin O'Malley in Kansas, that is easily duplicatable by parents all over this country, is the means by which the current system is being fundamentally altered such that returning to it will NOT be permitted.

This suit, where Mr. Palmer is assisting this court in finding a new more constitutionally permissible path in Beau's individual best interests, is a part of the next phase of the project. There will be NO remaining in place or going backwards. This court has one and only one direction available to it and that is forward towards more constitutionally compliant processes in family law and the opening of the federal courts to family law litigants who have never before had access to the federal courts.

The die is cast and even if Mr. Palmer were run over by a bus tomorrow, the system will continue to move in a better direction. This court can and should embrace movement in the better direction. This court has a sworn constitutional obligation to move in this more constitutional direction. A great many judges across this country will soon be picking the side of history upon which their legacies to be aligned. A great many will make the wrong choice.

This case is of profound national public interest both individually and as an important case in a larger nation-wide movement. This case is NOT about "various claims related to child custody and child support determinations associated with his parents' divorce." This case is about whether the United States Constitution permits the state of Mississippi to punish Beau, as a minor child, for his parents' otherwise lawful

---

[1] https://deming.org/explore/sopk/

and constitutionally protected marital choices over which Beau has absolutely NO control.

The right to divorce is a First Amendment protected individual privacy choice regarding an individual's intention to continue speaking and associating in a marital relationship with another individual. The state of Mississippi may NOT punish Beau for his parent's exercise of this fundamental right.

This court's casual misrepresentation of the nature of this case in a manner that denigrates Beau's constitutional claims creates the impermissible appearance of judicial bias against the subject matter and against holding state judges accountable for their illegal actions.

The Mississippi family law code is clearly a Bastardy Code that predicates protections for natural, individual, personal, and fundamental rights of parents and children that are protected by the First Amendment as speech, association, worship, and family privacy rights upon there existing a state approved marital association between the child's parents. When the parents dissolve that First Amendment protected marital association, by lawfully exercising their First Amendment protected privacy rights regarding continuing to further speak and associate in a marital relationship, the state of Mississippi deprives the child of natural, fundamental, individual, and personal federally protected rights.

The Supreme Court has already, many times over, held such punishment of children to be illogical, unjust, and incapable of surviving rational basis analysis, see Mathews v. Lucas, 427 US 495, 505 (1976):

> The Court recognized in Weber that visiting condemnation upon the child in order to express society's disapproval of the parents' liaisons is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. But where the law is arbitrary in such a way, we have had no difficulty in finding the

discrimination impermissible on less demanding standards than those advocated here.

See also Levy v. Louisiana, 391 US 68, 71, 72 (1968), Weber v. Aetna Casualty & Surety Co., 406 US 164, 175 (1972), Parham v. Hughes, 441 US 347, 358 (1979), Pickett v. Brown, 462 US 1, 8, 9 (1983), Cleburne v. Cleburne Living Center, Inc., 473 US 432, 453 (1985), Jimenez v. Weinberger, 417 US 628, 637 (1974), Mills v. Habluetzel, 456 US 91, 92, 93 (1982), Gomez v. Perez, 409 US 535 (1973).

See also Stanley v. Illinois, 405 US 645, 647-658 ( 1972):

This Court has not, however, embraced the general proposition that a wrong may be done if it can be undone... Surely, in the case before us, if there is delay between the doing and the undoing petitioner suffers from the deprivation of his children, and the children suffer from uncertainty and dislocation...

Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony. The Court has declared unconstitutional a state statute denying natural, but illegitimate, children a wrongful-death action for the death of their mother, emphasizing that such children cannot be denied the right of other children...

We observe that the State registers no gain towards its declared goals when it separates children from the custody of fit parents. Indeed, if Stanley is a fit father, the State spites its own articulated goals when it needlessly separates him from his family...

Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand...

Bell v. Burson held that the State could not, while purporting to be concerned with fault in suspending a driver's license, deprive a citizen of his license without a hearing that would assess fault. Absent fault, the State's declared interest was so attenuated that administrative convenience was insufficient to excuse a hearing where evidence of fault could be considered. That drivers involved in accidents, as a statistical matter, might be very likely to have been wholly or partially at fault did not foreclose hearing and proof in specific cases before licenses were suspended... We think the Due Process Clause mandates a similar result here. The State's interest in caring for Stanley's children is de minimis if Stanley is shown to be a fit father.

This case is also about federally imposed child support statutes that compel individuals to work for the benefit of other individuals, for the benefit of the state government, and for the benefit of the federal government under threat of imprisonment if they fail to labor for these interests in violation of the Thirteenth Amendment while leaving the child with two unequal fit parents or in this case with one free fit parent and one illegally incarcerated fit parent, incarcerated for failing to work for the benefit of Mississippi and the federal government.

This case is about whether this court will sanction Bastardy Codes and about whether this court will sanction peonage and involuntary servitude to Martin O'Malley and the Social Security Administration by violating Beau's First Amendment right to associate with Mr. Palmer to petition this court for redress of the injuries that government has caused Beau, where Mr. Palmer is the nation's foremost expert on this issue, and is an expert who openly rejects the government's authority to license his speech or to limit who may pay Mr. Palmer for his expertise because of the government's unproven and frankly false fears regarding the credibility of Mr. Palmer's speech.

The burden of proof in limiting speech and association for purposes of challenging unlawful government action is defined by strict scrutiny constitutional review and Defendant has NOT met his burden of proof under that or any constitutional standard. This court's attempt to apply rational basis review to presumptively quell politically motivated speech and association against corrupt government practices is a non-starter.

Beau demands clarity in the applicable burden of proof and the standard of proof that Defendant must meet.

**Federal Rule 17(b) Unconstitutional as Applied**

Federal Rule of Federal Procedure 17(b) is unconstitutional as applied by this court to Beau in this case because it grants the state legislature of Mississippi illegitimate authority to define Beau's fundamental right of access to a federal court and his First Amendment protected right to petition this court in a manner that impermissibly classifies him as being without the same fundamental right to access to federal courts and the same fundamental right to petition federal courts as 18-year-olds in other states with whom he is similarly situated.

Whether or NOT Beau has a First Amendment right to petition this court and a fundamental right to access this court to vindicate federal rights is a federal question that can only be answered by federal law, Hulen v. Yates, 322 F. 3d 1229, 1247 (10th Circuit 2003):

> But in deciding whether a state has violated a person's constitutional right to procedural due process, we should pay no attention to whether the state has complied with procedures mandated by state law. To be sure, state law determines whether a person has a property right. But once the property right is established, it is purely a matter of federal constitutional law whether the procedure afforded was adequate. As the Supreme Court said in Loudermill...Once it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute.

The fundamental rights at issue here, like the right to due process, are NOT created by legislative grace but by constitutional guarantee, Cleveland Bd. of Ed. v. Loudermill, 470 US 532, 541 (1985), (The right to due process is conferred, not by legislative grace, but by constitutional guarantee..)

State law can neither grant Beau these federal rights nor take away these federal rights, even where a federal rule seeks to delegate such unconstitutional authority to a

state, it is NOT withing either the federal judicial or legislative powers to grant states control over federal law or over the ability to exercise fundamental rights under federal law.

Even prisoners are entitled to access the courts but NOT a full-grown man who can enlist himself in the United States Military, see Hudson v. Palmer, 468 US 517 (1984):

> Like others, prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts. Johnson v. Avery, 393 U. S. 483 (1969).

See also Johnson v. Avery, 393 US 483, 486, 487 (1969):

> But this Court held that the regulation violated the principle that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." 312 U. S., at 549. Cf. Cochran v. Kansas, 316 U. S. 255, 257 (1942).

This court denies Beau access to the courts by denying the assistance of Mr. Palmer just as surely as prisoners are denied access when "jailhouse lawyers" are not permitted to assist them, see id. at 488, 490:

> Accordingly, the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system. In the case of all except those who are able to help themselves—usually a few old hands or exceptionally gifted prisoners—the prisoner is, in effect, denied access to the courts unless such help is available...

> But unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners...

> Yet there is a closed-shop philosophy in the legal profession that cuts down drastically active roles for laymen. It was expressed by a New York court in

denying an application from the Neighborhood Legal Services for permission to offer a broad legal-aid type of service to indigents...

That traditional, closed-shop attitude is utterly out of place in the modern world where claims pile high and much of the work of tracing and pursuing them requires the patience and wisdom of a layman rather than the legal skills of a member of the bar.

The courts may NOT consistently with our constitution act as labor unions for attorneys creating an artificially high barrier to entry that serves NO legitimate government purpose other than to keep prices high and supply low for a government favored class of tradesman.[2] In the case of family law, the bar defeats its very purpose because every single child custody case in this country is performed without the establishment of standing to litigate the best interests of a nonlitigant child against their fit parents and against the otherwise lawful and constitutionally protected marital and parental choices of those parents.

NO child may be injured by a fit parent's otherwise lawful and constitutionally protected exercise of parental authority, see <u>Palmore v. Sidoti</u>, 466 US 429 (1984).

*Palmore* was an appeal of a trial court's best interest of the child determination in a child custody modification proceeding incident to divorce between fit parents. The Palmore Court held the judge to be a state actor whose best interest determination was subject to constitutional review under well-established standards of review, that the best interest governmental interest was "substantial" and not "compelling," that even if the child were harmed by marital choices those harms were not justiciable, and that the best interest determination by the trial court judge cannot overcome rights protected by the compelling state interest standard.

*Palmore* remains good law, see <u>STUDENTS FAIR ADM. v. PRESIDENT FELLOWS HARVARD</u>, 143 S. Ct. 2141 (2023):

---

[2] When our constitution was ratified, attorneys were considered to be practicing a trade, not a profession. To the degree that this distinction may matter Beau raises it here.

These decisions reflect the "core purpose" of the Equal Protection Clause: "doing away with all governmentally imposed discrimination based on race." Palmore v. Sidoti, 466 U.S. 429, 432, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (footnote omitted). We have recognized that repeatedly. "The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." Loving, 388 U.S. at 10, 87 S.Ct. 1817; see also Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."); McLaughlin v. Florida, 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) ("[T]he historical fact [is] that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination.").

NOT a single attorney in any state which mandates standing, as an essential element of subject matter jurisdiction, has ever successfully challenged any court's absurd assertion of judicial jurisdiction to litigate the best interests of a nonlitigant as justification for depriving litigants of fundamental rights. It is practically impossible to even find a family law attorney who will openly admit that parents and children have constitutional rights in child custody cases.

The Kansas Supreme Court[3] openly declares that they have none and asserts parens patriae legislative jurisdiction rather than judicial jurisdiction to explain how judges have jurisdiction to "litigate" the best interests of a nonlitigant child against a fit parent's exercise of constitutional right, Frazier v. Goudschaal, 295 P. 3d 542, 553 (Kan: 2013):

We have declared that the public policy in Kansas requires our courts to act in the best interests of the children when determining the legal obligations to be imposed and the rights to be conferred in the mother and child

---

[3] Kansas law is raised as an example here because it is more readily available in a concise and easily understandable format than what has been currently found in Mississippi law. However, Mississippi constitutional law requires standing as an element of subject matter jurisdiction, even if its contours are a bit less strict than in Kansas, Texas, and many other states.

relationship... Further, after the family unit fails to function, "the child's interests become a matter for the State's intrusion," in order to avoid jeopardizing the child if "a parent's claim for the child is based solely or predominantly on [selfish] motives." ... In order to accomplish this parens patriae function of protecting our children, the district court must necessarily be invested with subject matter jurisdiction.

But this is a smokescreen because parens patriae jurisdiction is NOT judicial jurisdiction and even if the state legislature delegated authority to judges under parens patriae, the state constitution still demands a justiciable conflict established through standing rules before judicial jurisdiction may be exercised.

Further, it is NOT the duty of courts to protect children, that is a political function NOT a judicial function. The duty of the courts is quite clearly to provide a meaningful forum where state action, taken to protect children against presumed injury from fit parent exercises of otherwise lawful constitutionally protected privacy choices, can be subjected to adjudication under recognized standards of constitutional review.

When the courts take on the political duty and reject the judicial duty, the courts irreparably injure the child.

Kansas law is crystal clear on the requirement of standing, see <u>Gannon v. State</u>, 319 P. 3d 1196 (Kan: 2014):

> If a person does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy and the suit must be dismissed... Because the individual plaintiffs do not have standing, we need not address the plaintiffs' argument that the districts have standing to bring their claims on behalf of the individual plaintiffs under the doctrine of associational standing... An association has standing to sue on behalf of its members only when, among other things, the members have standing to sue individually... Accordingly, for this case to avoid dismissal and proceed to the merits, the plaintiff school districts must establish standing in their own right.

Under state and federal interpretation of the parens patriae authority the power is legislative, intended to apply only in the absence of fit parents, and may NOT be applied to violate constitutional rights of the child. In every state that asserts parens patriae authority in child custody suits, children who are subjects of these suits are irreparably injured by the impermissible violation of their constitutional guarantees against state action.

Government approved speakers apparently don't know even the most basic differences between parens patriae jurisdiction to act in the absence of fit parents without violating the rights of the child and judicial jurisdiction established only in specific justiciable conflicts. The attorney in the *Frazier* case apparently didn't understand the difference or he would have challenged the holding.

### Next Friend Associational Challenge

In this case, delay benefits Defendant and injures Plaintiff. In fact, the aging out of minor children into adulthood and resulting mootness of many causes of action is one of the primary ways that states avoid constitutional review of their unconstitutional family law codes.

This court refers to there being no evidence of a relationship between Beau and Mr. Palmer but provides NO standard by which to judge the nature of the relationship. How are they to meet a standard imposed by this court where the standard is NOT defined or is vaguely defined?

Nor does this court assert any government interest that is allegedly served by this association requirement. Just as the right to speak may NOT be compelled nor the refusal to speak punished, the right to associate may NOT be compelled nor may the lack of a particular type of association be punished by deprivation of other types of association.

Beau and Mr. Palmer assert that Mr. Palmer appears as next friend to assist Beau in petitioning this court for redress of grievances against the government where the government is engaged in a complex multi-tiered scheme to irreparably injure children for money where every branch of state government receives pecuniary benefit from the irreparable injury of children and where the federal government receives pecuniary

benefit for the irreparable injury of children sufficient to warrant the federal government paying the state of Mississippi considerable sums of money to apply a blatantly facially unconstitutional family code, parts of which the federal government certified as compliant with its scheme, in a manner that irreparably injures every child subject to the scheme's scope.

Next friend status is asserted as a First Amendment protected fundamental right and upon that assertion, the court does NOT have authority to "grant" next friend status and the burden of proof shifts from Beau and Mr. Palmer to Lynchard to provide compelling justification for depriving Beau and Mr. Palmer of their jointly exercised First Amendment rights that the courts label next friend.

Mr. Palmer, upon having his parental rights stripped from him upon the mere filing of a child custody petition by his ex-wife fought for and won 50/50 rights and custody of his child without either parent paying a dime in child support, depriving the state of a portion of Title IV-D money in the process.

Mr. Palmer assisted his then best friend, now wife of over 15 years, to protect her rights to her children in the same manner in a much nastier and more brutal battle. They won that battle.

In the process of Mr. Palmer's litigation, he appealed a charge of attorney's fees taxed as child support against the recommendation of every attorney he spoke with, one who was also a judge, and Mr. Palmer won his appeal, taking away child support enforcement mechanisms for a portion of attorney's fees. There, Mr. Palmer first experienced personal pecuniary bias from the advice of multiple attorneys, one who was also a judge.

Mr. Palmer has dedicated his life since that time to absolutely eradicating this profoundly corrupt system from the face of the earth, at least in America, as a political endeavor. Beau can absolutely trust that his personal and political interests in vindicating his rights against this corrupt system is deeply shared by Mr. Palmer. Other clients of Mr. Palmer's, Beau's fit father for instance, can attest that Mr. Palmer seeks to achieve this shared political goal by first individually protecting the full and equal rights of his clients. Mr. Palmer only takes on clients who seek to protect their full and equal

rights to their children or who believe they can meet the strict scrutiny standard necessary for alternate relief.

Mr. Palmer fully cites his work and can easily explain how a great many precedents from a great many areas of law also apply in the family law context and he can explain the nuances of when they apply and when they do NOT apply. Every parent who pays for his services has full and complete access to check the sources using the same free tools Mr. Palmer uses and decide for themselves what the constitution says and enforce their interpretation to the full extent of their individual powers as Chief Justice Marshall held was every American's right.

Where Beau is free to move to Texas and where he would in Texas be free to make his own choices and pay his own consequences, this court can cite NO compelling justification for depriving him of his right to do so in this federal court or to classify him differently than Americans of the same age in other states and it is clear error to apply state law to resolve the federal question of whether Beau has the federal right to vindicate his federal rights in this federal court. This court's orders have failed entirely to address that core issue and in so doing, this court has made a jurisdictional error in the exercise of its federal jurisdiction to answer federal questions, see

Where access to the federal courts to vindicate federal rights is a fundamental right, mere citation of rules will NOT suffice. This court must provide compelling justification to unequally classify Beau and NO state law can provide that justification, Cleveland Bd. of Ed. v. Loudermill, 470 US 532, 541 (1985):

> The point is straightforward: the Due Process Clause provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures... In short, once it is determined that the Due Process Clause applies, the question remains what process is due... The answer to that question is not to be found in the Ohio statute.

This court failed to address this issue in its order other than a broad reference to a federal rule taken out of context, applied broadly in a manner that deprives Beau of individualized fact and case specific due process and equal rights protections.

This court seeks to deprive Beau of First Amendment rights without adequate protections. The attachment of money to speech does NOT automatically deprive the speech of its First Amendment protections and arbitrary classifications that serve to censor Beau's access to extensive constitutional expertise must survive enhanced scrutiny constitutional review. The First Amendment does NOT permit the government to create a monopoly on speech based on its content or to defund speech as censorship based on its content or its source.

Beau lacks constitutional and legal expertise to adequately defend his own rights by himself and the First Amendment holds that he does NOT have to. Beau lacks confidence in the government's approved speakers and has substantial reason to distrust both their competence and their commitment to constitutional rights where the government controls their education, where they waive their own rights for a government approved job, and where the government provides substantial pecuniary incentive to attorneys, from lucrative but unconstitutional government schemes, to fail to protect their client's constitutional rights.

The only way that Mr. Palmer can dedicate so much of his time and energy to legally and politically defeating this nationwide irreparable injury of children for money scheme is by charging for his knowledge, expertise, and experience which is amply demonstrated in his work product and the venom with which his name is cursed in child custody courts all over the country.

By depriving Mr. Palmer of the ability to recover his costs from defendants when they lose against him, this court deprives Beau of the knowledge and expertise he needs to fight against a government that is actively irreparably injuring him every single day which is an impermissible form of government censorship, <u>Citizens United v. Federal Election Com'n</u>, 130 S. Ct. 876, 904, 908 (2010):

> The concept that government may restrict the speech of some elements of
> our society in order to enhance the relative voice of others is wholly foreign

to the First Amendment... When Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. This is unlawful. The First Amendment confirms the freedom to think for ourselves.

This court must demonstrate individualizes strict scrutiny justification for censoring Beau's access to information this court may believe comes from a distrusted source but where Beau and Beau's fit father trust the source and know how to verify the assertions of the source. Our freedom to think for ourselves is meaningless where we are NOT permitted to associate to speak in protection of our own shared thoughts and ideas against government tyranny.

This court may NOT simply assert that money alters the First Amendment protections of the speech or use money as a means of censoring speech, <u>Buckley v. Valeo</u>, 424 US 1, 16, 18 (1976):

> Yet this Court has never suggested that the dependence of a communication on the expenditure of money operates itself to introduce a non speech element or 'to reduce the exacting scrutiny required by the First Amendment... The critical difference between this case and those time, place, and manner cases ... direct quantity restrictions on ... communication and association by persons... in addition to any reasonable time, place, and manner regulations otherwise imposed... Even a significant interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.

The government's interest in preventing Beau from prevailing in his suit is strong. That interest is held by every federal judge who previously served as a state child custody judge and by the Social Security Administration. The interest is additionally shared by every federal judge who would rather bury irreparable injury to children than have the federal judiciary's complicity in this scheme exposed.

When balancing Mr. Palmer's and Beau's shared First Amendment protected interests against the government's illegitimate and sometimes substantial interests the appearance of bias against Beau by the federal judiciary must be taken into account and more searching inquiry conducted than otherwise might be.

Prayer

Beau McPhail prays that this motion in all things be granted.

Beau McPhail prays that he be permitted access to this court to vindicate his federal constitutional rights against a corrupt state and federal scheme that irreparably injures him by impermissibly depriving him of constitutional guarantees for his rights.

Beau McPhail prays that he be permitted the assistance of Mr. Palmer to assist him in petitioning this court for redress of grievances against a corrupt government scheme.

Beau McPhail Prays for any other such further relief as this court deems just and proper.

Respectfully Submitted by:

By: /s/ Beau McPhail
Beau McPhail, Pro Se
143 CR 380
Calhoun City, MS 38916

[662-417-5259]
[beauregaurdmcphail@gmail.com]

## **CERTIFICATE OF SERVICE**

I certify that on ___August___ '12 , 2024, according to the rules, all parties that

qualify on this motion have been served via the CM/ECF system.

By: /s/ Beau McPhail
Beau McPhail, Pro Se
143 CR 380
Calhoun City, MS 38916

[662-417-5259]
[beauregaurdmcphail@gmail.com]